[No. 13709. In Bank. — June 9, 1890.]

# THEODORE HAVEMEYER ET AL., PETITIONERS, v. SUPERIOR COURT, ETC., RESPONDENT.

APPOINTMENT OF RECEIVER — FORFEITURE OF CORPORATE CHARTER — JURISDICTION IN QUO WARRANTO. — The superior court has no jurisdiction to appoint a receiver of the property of a corporation in a *quo warranto* proceeding, upon judgment of forfeiture of its corporate charter. The rendition of the judgment authorized by section 808 of the Code of Civil Procedure ends the proceeding, and no receiver can be appointed unless a new suit is commenced by a creditor or stockholder of the corporation for that purpose, under section 565 of the Code of Civil Procedure.

ID. — DISPOSITION OF PROPERTY OF DISSOLVED CORPORATION. — When a corporation ceases to exist, from whatever cause, its property is left to be disposed of according to law; and upon the dissolution of a trading corporation by judgment of forfeiture, its property neither reverts to the grantors, nor escheats to the state, but belongs, after payment of its debts, to those who were stockholders at the date of its dissolution.

ID. — JURISDICTION OF EQUITY. — In the absence of a statute regulating the matter, a court of equity would have the right, at the suit of a stockholder or creditor, to appoint a receiver to administer the property of a dissolved corporation.

ID. — CONSTRUCTION OF CODE — RIGHTS OF DIRECTORS UPON INVOLUNTARY DISSOLUTION. — Under sections 400 and 565 of the Code of Civil Procedure, both of which refer to involuntary as well as voluntary dissolutions of corporations, the administration and distribution of the assets of a dissolved corporation is left, as a rule, to the directors in office at the date of dissolution, though such dissolution be upon judgment of forfeiture; and the appointment of a receiver is an exception, to be made only in cases of neglect of duty or abuse of power by the directors, when required for the protection of the rights of a creditor or stockholder.

ID. — RECEIVER IN CASES OF FORFEITURE. — The provision of section 564 of the Code of Civil Procedure, to the effect that a receiver *may* be appointed when a corporation has forfeited its charter, does not mean that a receiver *must* be appointed, in such case, on the ground that the public has an interest that the power should be exercised; but the true construction of that provision is to be found in section 565 of the same code, which enumerates the creditors and stockholders as the only parties whose interest can demand the appointment of a receiver of such corporation.

ID. — RIGHTS OF STOCKHOLDERS AND CREDITORS — NECESSITY OF RECEIVER. — It is at the option of a creditor or stockholder to have a receiver of a dissolved corporation appointed, in a suit brought for that purpose, provided facts can be alleged showing that a receiver is necessary; but if the directors are sued and brought into court without sufficient cause, even by a creditor or stockholder, they will recover costs.

ID. — INTEREST OF STATE IN DISTRIBUTION OF CORPORATE ASSETS. — The people of the state have no interest to be affected by the appointment of

84 327
87 235
87 268

84 327
91 347

84 327
92 267

84 327
101 146
101 150

84 327
106 326

84 327
108 436
84 327
110 53
110 58
110 140

84 327
115 151

84 327
121 545

84 327
f127 407

84 327
129 633
f129 634

84 327
133 365

84 327
141 720

84 327
e145 761
145 762
145 768

a receiver of the property of a dissolved corporation, which has forfeited its charter, for the purpose of distributing it among the stockholders and creditors of the corporation.

ID. — PUNISHMENT OF STOCKHOLDER — JUDGMENT OF FORFEITURE — FINE — CONFISCATION OF PROPERTY. — The appointment of a receiver to administer the assets of a corporation which has forfeited its charter is not designed or prescribed by the legislature as a penalty or part of the punishment to be visited upon the stockholders of the corporation in a proceeding in *quo warranto;* but the punishment is limited to the forfeiture of the charter, and the fine which the court may in its discretion impose; and the court cannot further affect the corporate property by its judgment, or confiscate or take it away from the stockholders.

ID. — WANT OF PENAL LEGISLATION — PROVINCE OF COURT. — It is no part of the function of a court to supply the want of penal legislation; and it cannot punish the stockholders of a corporation for the abuse of its charter beyond the terms of the law.

ID. — BREAKING UP MONOPOLY — RIGHTS OF STOCKHOLDERS. — The state is not warranted in taking into its control, by means of a receiver appointed in a *quo warranto* proceeding, the assets of a corporation which has been found to have forfeited its charter by entering into a monopoly to the disadvantage of the state, merely for the purpose of breaking up the monopoly; nor can it prevent the stockholders, in whom the assets of the corporation vest upon its dissolution, from doing with them whatever other natural persons may do with their property.

ID. — CONTRACT IN RESTRAINT OF TRADE — EXTENT OF PENALTY. — The only penalty which the law attaches to the contracts of natural persons in restraint of trade is to make them non-enforceable.

ID. — RECEIVER APPOINTED AFTER JUDGMENT — SUSPENSIVE APPEAL. — The functions of a receiver appointed after judgment for the purpose of carrying the judgment into effect are suspended by an appeal upon which a sufficient undertaking is given to stay proceedings upon the judgment; nor can a receiver be appointed to carry a judgment into effect after a stay bond has been given.

ID. — STAY OF PROCEEDINGS UPON JUDGMENT OF FORFEITURE OF CORPORATE CHARTER. — The giving of a sufficient undertaking upon appeal to stay execution of a judgment declaring the forfeiture of a corporate charter, and imposing a fine upon the corporation, suspends all proceedings upon the judgment for enforcement thereof, and precludes the subsequent appointment of a receiver by the superior court to carry its judgment of forfeiture into effect.

ID. — VOID ORDER APPOINTING RECEIVER. — An order appointing a receiver in a *quo warranto* proceeding against a corporation upon judgment of forfeiture is void *in toto*, not only as to strangers to the *quo warranto*, but also as to the corporation and its stockholders and vendees.

ID. — RES ADJUDICATA — RIGHTS OF STOCKHOLDERS WHO BECOME PURCHASERS. — Though the stockholders of a corporation may in a certain sense be parties to an action to forfeit its franchise, so as to be bound by the judgment rendered within the issues, they are not bound by any judgment or order foreign to the issues, embracing a receivership of property

which they have acquired from the corporation as its vendees, and which they had a right to purchase and enter into possession of with the same rights as any stranger would have had.

Id. — PURCHASE PENDENTE LITE. — A purchase by the stockholders of a corporation of its property, pending an action to forfeit its franchise, is not in fraud of the rights of the state, which has no lien on the property and cannot attack the sale.

Id. — ACTION FOR FORFEITURE — POWER OF CORPORATION PENDENTE LITE. — Up to the date of its dissolution, a corporation, pending an action for forfeiture of its franchise, has the same power of disposing of its property honestly and in good faith that any corporation has.

Id. — ATTACKING BONA FIDES OF SALE TO STOCKHOLDERS. — The *bona fides* of a sale of the property of a corporation to its stockholders, pending such action, cannot be questioned or attacked by means of an *ex parte* order appointing a receiver of the property sold, without affording the vendees, as such, an opportunity to contest the order, and giving them a day in court to adduce testimony to sustain their claim of ownership.

Id. — CONTEST OF RECEIVERSHIP BY STOCKHOLDERS. — The fact that the appointment of a receiver of the property of a corporation was contested by the stockholders, who requested that the trustees might be permitted to settle the business, does not bind them by an order appointing a receiver of property held by them as purchasers from the corporation.

Id. — ORDER APPOINTING RECEIVER — SPECIFIC DESCRIPTION OF PROPERTY — POSSESSION OF STRANGER TO ACTION. — The specific description of property in an order appointing a receiver, even in case where a specific description is appropriate, does not give the receiver a right to take the property from the possession of a stranger to the action who claims to be a purchaser in good faith.

WRIT OF PROHIBITION — SERVICE UPON PARTY IN INTEREST — RULE OF SUPREME COURT. — The rule of this court requiring that a petition for a writ of prohibition against a court shall disclose the names of the real parties in interest does not require that such parties be named as defendants in the writ, but only that their names should be disclosed by the petition, and that service of a copy of the petition and writ should be made upon them.

Id. — ABATEMENT — POSTPONEMENT. — The effect of a failure to serve such parties would not be an abatement of the whole proceeding, but, at most, merely require a postponement of the hearing until they could be served, and have a reasonable time to appear.

Id. — INDIRECT REPRESENTATION OF PARTY IN INTEREST. — The object of the rule requiring the party in interest to be served is substantially met, though there be no personal service upon him, if he is in fact represented by attorneys who appear in behalf of the judge of the superior court.

Id. — WHEN PROHIBITION LIES. — Prohibition arrests the proceedings of an inferior judicial tribunal or officer when such proceedings are without or in excess of jurisdiction, and where there is not a plain, speedy, and adequate remedy in the ordinary course of law.

Id. — PREVENTIVE AND REMEDIAL OFFICE OF WRIT — ANNULLING PROCEEDINGS PARTIALLY COMPLETED. — The operation of the writ of prohibition

is primarily and principally preventive, rather than remedial, and is ex-cluded where the action of the inferior tribunal is fully completed, and nothing remains to be done under its void order; but if its action is only partially and not fully completed, further proceedings may be stayed, and in such case the office of the writ is so far remedial that it will annul such prior proceedings as may be necessary to make the remedy complete.

ID. — ARRESTING AND ANNULLING ACTION OF RECEIVER UNDER VOID ORDER. — Though the writ of prohibition does not run against ministerial officers, nor to arrest completed action, yet, if a receiver has been appointed and is acting under a void judicial order appointing him, and directing him to seize and hold certain property, and he has seized and is holding the property thereunder, the property in his hands must be regarded as in the hands of the court, whose instrument the receiver is; and since action by the court is necessary so long as the property remains undisposed of, there is judicial action to be arrested and injury to be prevented, and a writ of prohibition will run to and operate directly upon the court, and indirectly upon the receiver, to prevent further action, and to annul the action taken under the void order, and compel restoration of the property seized.

ID. — RELIEF BY MOTION — SUIT AGAINST RECEIVER — APPEAL. — The existence of a right to move the court to set aside such void order, or to apply to the court for leave to sue the receiver in ejectment or in forcible entry, or to appeal from the order, will not preclude the granting of a writ of prohibition, as neither of those remedies is speedy or adequate to prevent a deprivation of the possession or use of the property ordered to be seized.

ID. — SEIZURE OF PROPERTY IN POSSESSION OF STRANGER — DISTINCTION BETWEEN ACTS OF RECEIVER AND ACTS OF COURT. — When a receiver acts in excess of authority in seizing property lawfully in possession of a stranger to the suit, he having a valid appointment which contains no directions in excess of the jurisdiction of the court, his void action may be resisted or remedied in other proper modes, and prohibition will not lie to prevent it; but when the court has exceeded its jurisdiction in appointing the receiver, or in directing him to take specific property out of the possession of a stranger, the wrong is in the order of the court, and prohibition will lie to prevent the resulting injury, which is directly due to the action of the court.

ID. — DISCRETION AS TO WRIT. — A court having jurisdiction to issue the writ of prohibition has no discretion to refuse it when demanded by the real party in interest in a proper case; but such party is entitled to the writ *ex debito justitiæ*, if he suffers from the usurpation of jurisdiction by an inferior tribunal.

ID. — PRELIMINARY OBJECTION TO JURISDICTION — OBJECTION DISCLOSED BY RECORD. — If a want of jurisdiction is apparent on the face of the proceeding in the lower court, no plea or preliminary objection is *necessary* before suing out the writ of prohibition.

ID. — OBJECTION REQUIRING PROOF. — If the proceeding in the lower court is not on its face in excess of jurisdiction, but is so in fact by reason of

the existence of some matter not disclosed, such matter ought to be averred in some proper form, to make the want of jurisdiction appear.

ID. — PRELIMINARY OBJECTION NOT ESSENTIAL TO JURISDICTION OF WRIT — LACHES. — It is not, however, essential to the jurisdiction of the higher tribunal to grant a writ of prohibition that a preliminary objection to the jurisdiction of the lower court be presented in that court.   The rule requiring it is one of practice merely, and the neglect to observe it is only laches, which may or may not be excused, according to circumstances.

ID. — RULE OF PRACTICE. — By the rule of practice adopted by this court, the writ of prohibition will not be issued until the objection to its want or excess of jurisdiction has been made in or overruled by the lower court, the whole foundation of the rule being the respect and consideration due to the lower court, and the expediency of preventing unnecessary litigation.

ID. — SUFFICIENCY OF OBJECTION. — It is not necessary that the preliminary objection to the jurisdiction of the lower court should be made by formal plea or motion, nor that steps should be taken therein which there was no opportunity to take, before applying for the writ of prohibition to arrest a threatened seizure of property under a void order; but it is sufficient if such objections to the jurisdiction as there was opportunity to make in the lower court were urged therein, and overruled before the writ is applied for.

ID. — TEST OF JURISDICTION AS TO TIME OF COMPLETION OF ACTS PROHIBITED. — It is the time when the writ of prohibition is ordered, and not the time when it is served, that fixes the extent of the power of the higher court to interfere with the proceeding in the lower court.

ID. — MATERIALITY OF POSSESSION OF RECEIVER — CONTEMPT. —So far as concerns prohibition of the action of the superior court in holding possession of property seized under a void order appointing a receiver and directing him to seize specific property claimed by a stranger, it is immaterial whether the seizure of possession was or was not complete before the writ was ordered, the completion of possession being only material to be inquired into upon a proceeding for contempt for taking possession in violation of the writ.

ID. — TRYING TITLE — DUE PROCESS OF LAW. — The title to property cannot be tried upon a writ of prohibition; and when a court by its order has taken property out of the actual possession of a stranger to the proceeding, who claims it as his own, the order is in excess of jurisdiction and void, irrespective of the actual state of the title; because no man can be deprived of his property without due process of law, nor can a court take property from his possession without a hearing, and compel him to prove title to regain it.

WRIT of prohibition to the Superior Court of the city and county of San Francisco, Department No. 6, Hon. William T. Wallace, judge.

The facts are stated in the opinion of the court.

*Wilson & Wilson,* and *Garber, Boalt & Bishop,* for Petitioners.

The court on appeal having secured the payment of the fine to the state, the appeal caused a suspension of the judgment below for all purposes, and it is not even evi· e ice of any fact between the parties. ( *Woodbury* v. *Bowman,* 13 Cal. 634; *Thornton* v. *Mahoney,* 24 Cal. 569; *McGarrahan* v. *Maxwell,* 28 Cal. 89; 49 Cal. 331, 336; *Murray* v. *Green,* 64 Cal. 369; Freeman on Judgments, 328.) The state, therefore, having no interest in the appointment of a receiver, could not propose a receiver. (Beach on Receivers, sec. 31; High on Receivers, sec. 11; *Attorney-General* v. *Day,* 2 Madd. 216; *Smith* v. *Wells,* 20 How. Pr. 58; *O'Mahoney* v. *Belmont,* 62 N. Y. 133, 143.) A receiver is only allowed, upon the principle of *quia timet,* to prevent probable injury to a claimant having a present or future fixed title to or lien upon the property, to justify taking it out of the hands of trustees otherwise entitled to administer it. (*Dougherty* v. *McDougal,* 10 Ga. 125; *Haimer* v. *Carpenter,* 1 Woods, 265; 2 Story's Eq. Jur., sec. 826; *Mays* v. *Rose,* 1 Freem. (Miss.) 718; *Overton* v. *Memphis & L. R. R. R. Co.,* 10 Fed. Rep. 866; *Voshell* v. *Hyman,* 26 Md. 92; *Speight* v. *Peters,* 9 Gill, 472; *Chicago & A. Oil & M. Co.* v. *United States,* 57 Pa. St. 83, 91; Beach on Receivers, sec. 123; High on Receivers, secs. 83, 84, 88, 89.) The provision that the directors of a corporation, at the time of its dissolution, shall remain trustees, is called by Chancellor Kent " a just and wise provision," and this view is affirmed by the courts. (2 Kent's Com. 368, and note; *Owen* v. *Smith,* 31 Barb. 641; *Heath* v. *Barnum,* 50 N. Y. 595; *In re Pontises,* 26 Hun, 232; Code Civ. Proc., sec. 565.) When the property of the dissolved corporation has once vested in its trustees upon a dissolution, it cannot arbitrarily be subsequently divested. (*People* v. *O'Brien,* 111 N. Y. 55, 58, 63.) In an action of *quo warranto,* the judgment is wholly at law, and there can be no equitable relief, since

the code does not provide therefor, or give equity any jurisdiction over the action. (*Civ. Code*, sec. 399; *Code Civ. Proc.*, sec. 809; *Slee* v. *Bloom*, 5 Johns. Ch. 381.) The judgment is limited to the seizure of the franchise of the corporation, and cannot be extended to the seizure of its property. (*State* v. *Ashley*, 1 Ark. 304, 305; *State Bank* v. *State*, 1 Blackf. 268, 281; Morawetz on Corporations, 1033, 1104.) There being no grant of jurisdiction to appoint a receiver at suit of the state in *quo warranto*, there is no such jurisdiction, as the statutory power to appoint a receiver cannot be extended by implication. (Beach on Receivers, secs. 403, 407, 408; High on Receivers, sec. 289; *Matter of Boynton*, 34 Hun, 371; *Lehigh* v. *Central*, 43 Hun, 546; *Matter of the Mail*, 22 Abb. N. C. 227; *United States Trust Co.* v. *New York*, 101 N. Y. 484; *Boggs* v. *McIntosh*, 23 Barb. 591; *People* v. *Washington Ice Co.*, 18 Abb. 383.) No case is made in the record for a receiver, and a decree not founded upon written pleadings or allegations is in excess of jurisdiction, and void. (*Windsor* v. *McVeigh*, 93 U. S. 282; *Sabirego* v. *Maverick*, 124 U. S. 292; *Smith* v. *Woolfolk*, 115 U. S. 148; *United States* v. *Walker*, 109 U. S. 266; *The J. W. French*, 13 Fed. Rep. 23; *Hardy* v. *McClellan*, 53 Miss. 512; *Welburn* v. *McCall*, 7 Heisk. 271; *Justice* v. *McBroom*, 1 Lea, 555.) *A fortiori* did the court exceed its jurisdiction in not only appointing a receiver, but in authorizing him and clothing him with a specific and special power to wrest from these petitioners property in their possession, under claim of right, for a long period before the receiver was even applied for. It matters not that the conveyance under which the petitioners claim was made after the *quo warranto* was brought. There is absolutely no place here for the application of any doctrine or rule of *lis pendens*. (*Payne* v. *Root*, 121 Ill. 82; Wade on Notice, sec. 351; *Andrews* v. *Pascheon*, 67 Wis. 414; *City of San José* v. *Fulton*, 45 Cal. 319; Freeman on Judgments, 2d ed., sec. 196; Bennett on Lis Pen-

dens, secs. 91, 94; *Miller* v. *Sherry*, 2 Wells, 237; *Lewis* v. *Mew*, 1 Strob. Eq. 130; *Hamlin* v. *Bevan*, 7 Ohio, 316; 28 Am. Dec. 625; *Jaffray* v. *Brown*, 17 Hun, 556; *Brightman* v. *Brightman*, 1 R. I. 130; *Dovey's Appeal*, 97 Pa. St. 153; *Seisfeld* v. *Kirkbride*, 62 Tex. 455; *Feigley* v. *Feigley*, 7 Md. 563; 61 Am. Dec. 375; *Low* v. *Pratt*, 59 Ill. 438.) A receiver cannot be vested with title of a date previous to his appointment. (*Artisan's Bank* v. *Treadwell*, 34 Barb. 559; *Van Alstyane* v. *Cook*, 25 N. Y. 495, 496; High on Receivers, sec. 136; Beach on Receivers, sec. 168.) A party in possession claiming title must have trial of his right by due process of law before he can be dispossessed. (*McCoombs* v. *Merrihew*, 40 Mich. 725; *Salling* v. *Johnson*, 25 Mich. 491; *State* v. *Michell*, 2 Bail. 225; *Queen* v. *Judge*, L. R. 20 Q. B. Div. 167; *White* v. *Gates*, 42 Ohio St. 111; *Mays* v. *Wherry*, 3 Tenn. Ch. 34; *Sea Ins. Co.* v. *Stebbins*, 8 Paige, 567; *Higgins* v. *Bailey*, 7 Rob. (N. Y.) 613; *Bostwick* v. *Isbell*, 41 Conn. 305; *People* v. *O'Brien*, 111 N. Y. 62; *Ex parte Hollis*, 59 Cal. 405; *Ex parte Casey*, 71 Cal. 270; *Searles* v. *Jacksonville R. R. Co.*, 2 Woods, 626; *Gradinstein's Appeal*, 49 Pa. St. 321; *Jones* v. *Schall*, 45 Mich. 380; *Arnold* v. *Bright*, 41 Mich. 210; *Wattson* v. *Dowling*, 26 Cal. 125; *Tevis* v. *Ellis*, 25 Cal. 515; *Long* v. *Neville*, 29 Cal. 131; *Mayo* v. *Sprout*, 45 Cal. 99; *Baker* v. *Backus*, 32 Ill. 80; *Olmstead* v. *Rochester*, 46 Hun, 552.) Prohibition will lie to prevent the exercise of unauthorized judicial power, in any case. (*Quimbo* v. *Appo*, 20 N. Y. 540.) The remedy includes the delivery or restitution of property seized and held without jurisdiction. (Fitzherbert's Natura Brevium, 45, 46; 2 Harris Entries, 450, 451; 2 Chitty's Practice, 354, 355; *White* v. *Field*, 12 Com. B., N. S. (104 Eng. Com. L.) 383; *French* v. *Noel*, 22 Gratt. 454.) Prohibition will lie to prevent the holding of property under a void order of court. (*Gist* v. *Cole*, 2 Nott & McC. 461; 10 Am. Dec. 616; *Ex parte Morgan Smith*, 23 Ala. 94; *Queen* v. *Judge*, 20 Q. B. Div. 167.) It will lie to prohibit carrying a void

order or judgment into execution. (*State* v. *Michell*, 2 Bail. 225, *Hutson* v. *Lowry*, 2 Va. Cas. 42; *French* v. *Noel*, 22 Gratt. 454; *Jones* v. *Owen*, 5 Dowl. & L. 669; *Marsden* v. *Wardle*, 3 El. & B. 695; *Thompson* v. *Ingham*, 14 Q. B. 710; *Zylstra* v. *Corporation*, 1 Bay, 375; *Ramsay* v. *Court*, 2 Bay, 180; *Ingersoll* v. *Buchanan*, 1 W. Va. 184.) A plea to the jurisdiction in the lower court is not an essential prerequisite to the writ. (*Mayor of London* v. *Cox*, L. R. 2 H. L. 239, 278, 280.) When want of jurisdiction appears upon the face of the proceedings, an objection in the court below is not essential. (*Mayor of London* v. *Cox*, L. R. 2 H. L. 239, 278, 280; *Ex parte Hill*, 38 Ala. 429, 443.) The holding by the receiver of specified property described in the order of his appointment is the holding of the court. (*Coburn* v. *Ames*, 57 Cal. 203; *Elliott* v. *Warford*, 4 Md. 80; *Van Rensselaer* v. *Emery*, 9 How. Pr. 138; *Williamson* v. *Wilson*, 1 Bland, 421; *Beverly* v. *Brooke*, 4 Gratt. 211; *Angel* v. *Smith*, 9 Vern. 337; *Battle* v. *Davis*, 66 N. C. 252; *De Visser* v. *Blackston*, 6 Blatchf. 235; *Mays* v. *Rose*, Freem. (Miss.) 718; *Bruce* v. *Manchester & K. R. R. Co.*, 19 Fed. Rep. 342; *Field* v. *Jones*, 11 Ga. 417; *Elliott* v. *United States Ins. Co.*, 7 Md. 307; *Wiswall* v. *Sampson*, 14 How. 65; *Peale* v. *Phips*, 14 How. 368; *King* v. *O. & M. R. R. Co.*, 7 Biss. 529; *Thompson* v. *Scott*, 4 Dill. 510; *Richards* v. *C. & O. R. R. Co.*, 1 Hughes, 32.) It follows that prohibition should lie to prevent an unauthorized consummation of a seizure by the court of property over which it has no jurisdiction, and which belongs to persons not parties to the suit. (*Arnold* v. *Bright*, 41 Mich. 210; *Jones* v. *Schall*, 45 Mich. 379.) A writ of possession is not fully executed, so as to prevent a stay of proceedings from operating until the party in possession is fully dispossessed. (*Lee Chuck* v. *Quan Wo Chung Co.*, 81 Cal. 222.) There is no disseisin of any portion of premises of which the owner remains in actual possession, though some other portion of the premises is held adversely under a claim of right to the whole. (*Bellis* v. *Bellis*,

122 Mass. 417; *Bradley* v. *West,* 60 Mo. 33; *Ross* v. *Roadhouse,* 36 Cal. 580.) Where a receiver attempts a forcible entry upon the possession of a stranger to the suit, he certainly ought not to be held to have consummated the entry until he has acquired such an actual, peaceable, and exclusive possession as would entitle him in turn to maintain an action of forcible entry and detainer against an intruder. But it is well settled that that action will not lie in favor of one who has a mere scrambling, interrupted, and disputed possession or control. (*House* v. *Keiser,* 8 Cal. 500; *Hoag* v. *Pierce,* 28 Cal. 188, 191; *Voll* v. *Butler,* 49 Cal. 74; *Bowers* v. *Cherokee Bob,* 45 Cal. 496; *Conroy* v. *Duane,* 45 Cal. 597; *Tivnen* v. *Monahan,* 76 Cal. 131; *Anderson* v. *Mills,* 40 Ark. 194; *Johnson* v. *West,* 41 Ark. 535; *Blake* v. *McCray,* 65 Miss. 443.) In cases of mixed possession, the legal seisin is according to title. (*Codman* v. *Winslow,* 10 Mass. 146; *Hall* v. *Powell,* 4 Serg. & R. 465; 8 Am. Dec. 722; *Cheney* v. *Ringgold,* 2 Har. & J. 87-94; *Hall* v. *Gittings,* 2 Har. & J. 112, 115; *Mather* v. *Ministers etc.,* 3 Serg. & R. 509; 8 Am. Dec. 663; Tillinghast's Adams on Ejectment, 54, and notes; *Davidson's Lessee* v. *Beatty,* 3 Har. & McH. 621; *Hunt* v. *Wickliffe,* 2 Pet. 201; *Green* v. *Liter,* 8 Cranch, 229.)

*William M. Pierson,* for Superior Court, Respondent.

No application was made to the court below by plea to the jurisdiction, or by affidavit, before the application to this court. Such application was jurisdictional. (High on Extraordinary Legal Remedies, sec. 773; rule 28, Supreme Court; *Ex parte Hamilton,* 51 Ala. 62; *Barnes* v. *Gottschalk,* 3 Mo. App. 111; *Ex parte McMechan,* 12 Ark. 70; *Ex parte Little Rock,* 26 Ark. 52; *Ex parte Williams,* 4 Ark. 537; Wells on Jurisdiction, secs. 111, 502; *State* v. *Iaage,* 29 La. Ann. 806, 808; Shortt on Prohibition, *486, 487; *Chester* v. *Colby,* 52 Cal. 517; *Southern P. R. R. Co.* v. *Superior Court,* 59 Cal. 476.) The court had the

power to appoint a receiver of the dissolved corpora-
tion.   (Code Civ. Proc., sec. 564, subds. 4, 5; Civ. Code,
sec. 400; *French Bank Case,* 53 Cal. 527, 541, 550, 553;
*Folger* v. *Columbian Ins. Co.,* 99 Mass. 267; 96 Am. Dec.
747; *Miami Co.* v. *Gano,* 13 Ohio Rep. 269; *Columbian
Co.* v. *De Golyer,* 115 Mass. 69; *Hubbell* v. *Syracuse Co.,*
42 Hun, 182; *Attorney-General* v. *Mutual Ins. Co.,* 77
N. Y. 275; *Vermont Co.* v. *Vermont Cent. Co.,* 46 Vt. 792;
*People* v. *North River Sugar Ref. Co.,* 6 N. Y. Sup. Ct. 408;
*Secord* v. *Wickenham,* 29 Kan. 748; *People* v. *Northern
R. R. Co.,* 42 N. Y. 217; *Bacon* v. *Robertson,* 18 How. 488;
*Lum* v. *Robertson,* 6 Wall. 277; note to 12 Am. Dec.
243; *National Bank* v. *Colby,* 21 Wall. 614; High on Re-
ceivers, sec. 203.)   The court had the jurisdiction and
power to define in the order appointing the receiver the
property which the receiver was to take.   (*Crow* v. *Wood,*
13 Beav. 271; High on Receivers, sec. 87; Edwards on
Receivers, 79–81; *O'Mahoney* v. *Belmont,* 62 N. Y.
148; *Curran* v. *Craig,* 22 Fed. Rep. 101; *Ex parte Cohen,*
5 Cal. 494.)   The court had the jurisdiction and power
to decide whether the petitioners herein in possession
were in such possession as agents or trustees of the corpo-
ration.   Being stockholders in the corporation they were
*prima facie* in possession as such, and not in their own
right.   (*Ex parte Cohen,* 5 Cal. 494; *Parker* v. *Browning,* 8
Paige, 388; 35 Am. Dec. 717; Edwards on Receivers,
2d ed., p. 145; *Howell* v. *Ripley,* 10 Paige, 46; High on
Receivers, sec. 129, 145; *Greese* v. *Beal,* 5 Wis. 230;
*United States* v. *Mormon Church,* 18 Pac. Rep. 39.)   The
corporate franchises belong to the share-holders.   (Mora-
wetz on Private Corporations, secs. 922, 930; *Fistram* v.
*Hay,* 122 Ill. 293; *Paul* v. *Virginia,* 8 Wall. 181; *Mem-
phis R. R. Co.* v. *Commissioners,* 112 U. S. 619; Water-
man on Corporations, secs. 158, 159; *Pierce* v. *Emery,* 32
N. H. 484, 507; *Coe* v. *Columbus R. R. Co.,* 10 Ohio St.
385; 75 Am. Dec. 518; *State* v. *Sherman,* 22 Ohio St. 411,
428; 2 Kent's Com. 267; *Hall* v. *Sullivan,* 21 Law

Rep. 138; Bouvier's Law Dict., tit. Charter.) When
the corporators applied to the state for the charter, they
asked, among other franchises, that they have the right
to sue and be sued by their corporate name. (*People* v.
*Kingston etc. Co.*, 23 Wend. 205.) The stockholders are
bound by the judgment and its consequences,— the
compulsory winding up. (*Hedges* v. *Superior Court*, 67
Cal. 405; High on Receivers, sec. 140; *Clapp* v. *Peterson*,
104 Ill. 31; *Wetherbee* v. *Baker*, 35 N. J. Eq. 501, 507;
Morawetz on Private Corporations, sec. 886; Bigelow on
Estoppel, 4th ed., p. 129, note 8; *Great Western Tel. Co.* v.
*Gray*, 122 Ill. 637; *State* v. *Atchison R. R. Co.*, 38 N. W.
Rep. 47.) The court having jurisdiction to appoint a
receiver, no irregularity in the appointment can be con-
sidered upon prohibition. (*People* v. *Supervisors*, 47 Cal.
81; *People* v. *Whitney*, 47 Cal. 584; *Chester* v. *Colby*, 52 Cal.
516; *Bandy* v. *Ransom*, 54 Cal. 87; *Clark* v. *Superior Court*,
55 Cal. 199; *Wreden* v. *Superior Court*, 55 Cal. 504; *Coker*
v. *Superior Court*, 58 Cal. 178; *Hedges* v. *Superior Court*,
67 Cal. 405; *Ah Goon* v. *Superior Court*, 61 Cal. 555.)
When duly appointed receiver, he became a ministerial
officer. He has and can exercise no judicial function.
He is merely an executive officer of the court. Prohibi-
tion will not lie against him. (*Haile* v. *Superior Court*,
78 Cal. 418; *Hobart* v. *Tillson*, 66 Cal. 210; *People* v. *Board*,
54 Cal. 404; *Le Conte* v. *Berkeley*, 57 Cal. 269; *Spring V.
W. Co.* v. *San Francisco*, 52 Cal. 111; *Maurer* v. *Mitchell*, 53
Cal. 289; *Ex parte Bradlacht*, 2 Hill, 367; *Arnold* v. *Shields*,
5 Dana, 18; 30 Am. Dec. 669; *Barnes* v. *Gottschalk*, 3 Mo.
App. 222.) The writ of prohibition cannot have any
retroactive effect. Its function is not and does not pur-
port to have the effect to nullify or in the least affect any
judicial action already taken. The respondent had acted
twenty-four hours before the writ was applied for. (*Hall*
v. *Superior Court*, 63 Cal. 179; *United States* v. *Hoffman*, 4
Wall. 158–163; *Dayton* v. *Paine*, 13 Minn. 454.) "A scram-
bling possession" of a receiver is something unheard of

in the literature of jurisprudence. His possession was complete when he went upon the premises and exhibited his authority. The law was then in possession. Those who refused to recognize him were simply in contempt, whether the order was valid or not. (Sir Samuel Romilly in *Ames* v. *Trustees*, 20 Beav. 332, 353; High on Receivers, sec. 143; *Ex parte Cochran*, 20 L. R. Eq. 286; *Maynard* v. *Bond*, 67 Mo. 318; *Edrington* v. *Pridham*, 65 Tex. 612, 616; *Vermont Co.* v. *Vermont Cent. Co.*, 46 Vt. 792.) Petitioners had a plain, speedy, and adequate remedy at law by application to the lower court, by *certiorari*, by summary proceeding for a trespass, or by appeal. Having such, prohibition does not lie. (*Haile* v. *Superior Court*, 78 Cal. 418; High on Receivers, sec. 139; *Commissioners* v. *Spiller*, 13 Ind. 235; *Ex parte Smith*, 34 Ala. 455; *Kemp* v. *Vintulett*, 58 Ga. 419; *State* v. *Judge*, 11 Wis. 50; *State* v. *Beame*, 31 Wis. 600; *People* v. *Clute*, 42 How. Pr. 157; *Larcon* v. *Hammond*, 18 B. Mon. 673; *Supervisors* v. *Wingfield*, 27 Gratt. 329.) If the court had jurisdiction to appoint a receiver, the question whether the property taken by the receiver belonged to the defendant or was claimed by A, cannot be tried on prohibition. To so hold would be to hold that trespass, forcible entry, or ejectment, could be tried on prohibition. (*Haile* v. *Superior Court*, 78 Cal. 418.)

*Sullivan & Sullivan*, and *W. H. Metson*, for P. Reddy, Receiver, Respondent.

Prohibition is a prerogative writ of grace, and not of right. (High on Extraordinary Legal Remedies, 765.) The corporators are bound by the judgment against the corporation, and by the order appointing a receiver of its property. (*San Mateo County* v. *S. P. Co.*, 8 Saw. 238; *Burke* v. *Badlam*, 58 Cal. 601; Freeman on Judgments, sec. 174; *Valentine* v. *Mahoney*, 37 Cal. 389; *Stoddard* v. *Thompson*, 31 Iowa, 80; *Conyer* v. *Chilcote*, 42 Iowa, 18; *Elliott* v. *Hayden*, 104 Mass. 180.) Having assumed in the course of the proceedings that the property belonged

to the corporation, and contested a receivership of its property, they are estopped from claiming the property. (*Page* v. *Fazeacrely*, 36 Barb. 396.) Persons not parties to the record who instigate or take part in the litigation are estopped by its result. (*Landis* v. *Hamilton*, 17 Mo. 561; *Strong* v. *Phœnix Ins. Co.*, 62 Mo. 295; 21 Am. Rep. 417; *Noonan* v. *Nunan*, 76 Cal. 49; *Shiels* v. *Barrow*, 17 How. 144; *Donman* v. *Intelligency Co.*, 70 Mo. 175; *Kune* v. *Weil*, 73 Mo. 215; *Truesdale* v. *Sarles*, 104 N. Y. 167; *Rue* v. *Perry*, 63 Barb. 43.) There could be no valid purchase by persons with actual notice of the pending suit, though no notice of *lis pendens* was filed. (*Abadie* v. *Lobero*, 36 Cal. 390; *Montgomery* v. *Byers*, 21 Cal. 107; *Ferrea* v. *Chabot*, 63 Cal. 568; Story's Eq. Pl., sec. 156.) The seizure of the property by the receiver did not affect the title, and does not deprive the possessor of property without due process of law. (High on Receivers, 143; *In re Cohen*, 5 Cal. 494; *Geisse* v. *Reall*, 5 Wis. 224; *Thornton* v. *Washington Savings Bank*, 76 Va. 432; *Vermont and Canada R'y Co.* v. *Vt. C. R. R.*, 46 Vt. 798; *Ames* v. *Trustees*, 20 Beav. 353; *Noe* v. *Gibson*, 7 Paige, 515.) When the writ was served the receiver was rightfully in possession of the premises under a valid order of the superior court, made in a case of which it had jurisdiction, and against parties who were clearly subject to its judgment and orders. (*Ex parte Cochran*, L. R. 20 Eq. 286; *Maynard* v. *Bonn*, 67 Mo. 318; *Edrington* v. *Pridham*, 65 Tex. 612, 616; *Angel* v. *Smith*, 9 Ves. 339; *Brooks* v. *Greathead*, 1 Jacob & W. 178; Beach on Receivers, 213, 224, 225; 2 Daniel's Chancery Practice, 1743, 1744.) Prohibition will not lie when there is another remedy in the ordinary course of law. (*Levy* v. *Wilson*, 69 Cal. 105; *Clarke* v. *Superior Court*, 55 Cal. 199; *Superior Court* v. *Stanislaus County*, 55 Cal. 504; High on Extraordinary Legal Remedies, sec. 770.) Want of jurisdiction must appear upon the face of the record, to justify prohibition. (*Buggan* v. *Bennett*, 4

Burr. 2035; *Ex parte Easton*, 95 U. S. 68; *Broeck* v. *Barge John Welch*, 2 Fed. Rep. 372.) If jurisdiction depends upon disputed facts, the existence of such facts cannot be tested on prohibition. (High on Extraordinary Legal Remedies, 788; *Ex parte Brandlacht*, 2 Hill, 367; *Succession of Whipple*, 2 La. Ann. 236; *State* v. *Judge*, 10 Rob. (La.) 169; *People* v. *Surrogate*, 16 Abb. N. C. 241.) Prohibition will not lie to try title to property. (*More* v. *Superior Court*, 64 Cal. 345; *Sullivan* v. *Shanklin*, 63 Cal. 251; *W. & M. Wagon Road Co.* v. *Supervisors*, 64 Cal. 69; *Van Zandt* v. *Argentine Mfg. Co.*, 2 McCrary, 642; *Mamer* v. *State*, 107 Ind. 539; *Robertson* v. *Bingley*, 1 McCord Eq. 193; *Hale* v. *Superior Court*, 78 Cal. 418; *Ex parte Easton*, 95 U. S. 77; *Broeck* v. *Barge John Welch*, 2 Fed. Rep. 371.) Prohibition does not lie to a ministerial officer. (*Maurer* v. *Mitchell*, 53 Cal. 201; *Camron* v. *Kenfield*, 57 Cal. 553; *Farmers' Union* v. *Tresher*, 62 Cal. 210; *Hull* v. *Superior Court*, 63 Cal. 179; *People* v. *Election Comm'rs*, 54 Cal. 403.) Prohibition is preventive, not remedial, and will not lie where the proceeding is completed; nor is it appropriate to procure annulment of proceedings already had. (High on Extraordinary Legal Remedies, 766; *More* v. *Superior Court*, 64 Cal. 345; *Coker* v. *Superior Court*, 58 Cal. 179; *Hull* v. *Superior Court*, 63 Cal. 179; *United States* v. *Hoffmann*, 4 Wall. 158; *Ex parte Easton*, 95 U. S. 72; Hawes on Jurisdiction, sec. 158; Wells on Jurisdiction, sec. 512; *Dayton* v. *Payne*, 13 Minn. 495; *People* v. *Excise Comm'rs*, 61 How. Pr. 514; 5 Wait's Actions and Defenses, 254; *Thompson* v. *Tracy*, 60 N. Y. 31; *People* v. *Seward*, 7 Wend. 518; *State* v. *Scott*, 1 Bail. 294; *State* v. *Judge*, 38 La. Ann. 178; *In re Denton*, 1 Hurl. & C. 654.) Prohibition will not issue until after plea of jurisdiction and refusal thereof by the inferior tribunal. (High on Extraordinary Legal Remedies, 773; *State* v. *Judge*, 28 La. Ann. 806; *Ex parte McMeechan*, 12 Ark. 70; *Ex parte City of Little Rock*, 26 Ark. 502; *Hudson* v. *Superior Court*, 42 Mich. 239; *Ex parte Williams*, 4 Ark. 137; Wells on Jurisdiction, 502.)

BEATTY, C. J.— This is an original application for a writ of prohibition to the superior court of the city and county of San Francisco, department No. 6, William T. Wallace, judge, commanding and directing said court and judge, and the receiver of said court, Patrick Reddy, Esq., to desist and refrain from proceeding or acting upon or in pursuance of a certain order appointing said receiver.

The importance of the case, not only as regards the interests at stake, but also in respect to the questions of law and practice which it involves, will justify, if it does not require, a somewhat detailed statement of the facts out of which it arises.

It appears that in the month of November, 1888, the people of the state of California, on the relation of the attorney-general, commenced an action in said superior court against the American Sugar Refinery Company, a California corporation, for the purpose of forfeiting its charter. The corporation appeared and answered the complaint, and after trial the judgment of said superior court was pronounced, declaring the forfeiture and imposing upon the corporation defendant a fine of five thousand dollars and costs of suit.

The judgment was rendered January 8, 1890, and on the same day, at the instance of the attorneys representing the state, a rule was issued and served requiring said corporation and its attorneys to show cause on the 10th of January why a receiver should not be appointed " to take charge of the estate and effects of the said defendant corporation, and to distribute the same according to law, or to preserve the same pending an appeal herein, if such appeal be taken herein, on the ground that said defendant corporation, has been dissolved and has forfeited its corporate rights."

On the return day of the rule, the corporation appeared, and the hearing was continued until January 20th.

Meantime— on January 18th — the corporation duly

served and filed its notice of appeal to this court from the judgment against it, and at the same time filed in due form a bond in the penal sum of twelve thousand dollars to stay proceedings on said judgment.

After hearing the motion for a receiver, the judge of the superior court held the matter under advisement until February 17th, on which day he made an order as follows (after reciting the previous proceedings):—

"It is ordered that Patrick Reddy, a resident of the city and county of San Francisco, state of California, be, and he hereby is, appointed receiver of the property and effects of the defendant, wherever the same may be situate, including the American Sugar Refinery, situate at the southwest corner of Union and Battery streets, in this city and county, and its appurtenances.

"It is further ordered that the defendant, its officers, agents, attorneys, servants, and employees, and all persons and corporations, associations, or firms holding any of the defendant's property in trust for said defendant or its stockholders, do immediately, upon the production of this order, surrender into the possession of said receiver all the said property, real, personal, and mixed, wherever situate, belonging to said defendant, including all its books, records, and papers.

"And it is further ordered that said receiver do immediately take into his exclusive possession all the books, records, and papers of said defendant, and all the said property, real, personal, and mixed, of the said defendant, including the said American Sugar Refinery so, as aforesaid, situate in said city and county, and hold the same pending the appeal from the judgment herein, and the final determination of the motion for new trial, and until the further order of this court; and that said receiver at once close the said refinery, and do not dispose of any of the said property of the said defendant until the further order of this court.

"It is further ordered, and I hereby direct, that the

said receiver execute to the state of California an undertaking, with two sufficient sureties, to be approved by me, in the sum of ten thousand dollars, to the effect that he will faithfully discharge the duties of receiver in the above-entitled action.

"Dated February 17, 1890.

"WILLIAM T. WALLACE, Judge."

On the same day a second order was made, which, after reciting the one above quoted, and the fact that the receiver had executed and filed a sufficient undertaking as therein required, and had taken the oath of office, concludes as follows:—

"Now, therefore, it is hereby ordered that said receiver be, and he is hereby, invested with all the power and authority mentioned and conferred in said order hereinabove recited, to the same extent as if the same were again here repeated and recited at length.

"Dated February 17, 1890.

"WILLIAM T. WALLACE, Judge."

Immediately upon the issuance of this order, Mr. Reddy proceeded to the sugar refinery therein mentioned, which he found in full operation under the direction and control of a superintendent, foreman, and others in the pay and employment of the petitioners herein, who claim to have purchased the property and to have received a conveyance thereof from the American Sugar Refinery Company in the month of March, 1889, since which time they assert that they have been in full and complete possession as absolute owners in their own exclusive right.

Mr. Reddy, however, demanded of those in charge that they should immediately transfer the possession of the premises and everything connected with and contained in the refinery to him, as receiver, and he claims that on the evening of the 17th he had succeeded in obtaining full and absolute possession and control of the entire establishment. This claim is disputed by the peti-

tioners, and whether it is true or not is one of the principal questions in the case. The facts upon which its solution depends will be reviewed when the question is reached. Meantime, and for the purposes of this preliminary statement, it is sufficient to say that the petitioners and the receiver each claim to have had possession of the refinery on the 17th of February and on the following day. The receiver claims that his possession was complete and absolute from and after the evening of the 17th. The petitioners contend that, at most, there was a mere scramble for possession by the receiver up to the time when he was served with notice of the alternative writ of prohibition herein on the afternoon of February 18th.

The first notice that the petitioners, or their employees, had of the order appointing the receiver, and directing him to take possession of the sugar refinery, was Mr. Reddy's demand for possession and proclamation of his authority. The agents in charge of the refinery, before yielding to his demands, asked to be allowed an opportunity of obtaining legal advice as to their rights and duties in the matter. This was conceded by Mr. Reddy, upon the understanding that the superintendent of the refinery would notify him at ten o'clock next morning what course he had decided to take. Availing themselves of this respite, the agents of petitioners consulted counsel, and during the night of February 17th, affidavits were prepared upon which to base an application to Judge Wallace for a suspension or modification of his order. Prior to ten o'clock on the following morning, Mr. Reddy was notified of this intended application, and at about the hour of ten o'clock he and his counsel, and counsel for petitioners, met Judge Wallace at his chambers, where, at least, an informal application was made to the judge for a stay of proceedings pending a motion to set aside or modify his previous order directing the receiver to take possession of and close the refinery. What

occurred at this interview is one of the principal points of controversy in the case, as involving a question of practice or procedure. The facts will be stated, so far as necessary, when we come to consider that question.

For the present it is sufficient to say that Judge Wallace refused to grant any stay of proceedings for even an hour, unless the petitioners would at once desist from all opposition to the receiver, and yield instant and absolute possession of the refinery and other property. This condition was not assented to, and it was then agreed between Mr. Reddy and his counsel, upon one side, and counsel for petitioners on the other, that at the hour of twelve o'clock on that day counsel for Mr. Reddy should be informed what further steps the petitioners had decided to take, and whether they would further oppose his claims, as receiver, to the possession of the refinery.

At twelve o'clock, counsel for Mr. Reddy was notified in substance that his right to the possession could not be admitted, and that his taking possession would be opposed so far as it could be done without a resort to actual force or violence. Meantime, Mr. Reddy had again attempted to assert and enforce his possession and authority at the refinery, and had met with such resistance that he felt it necessary to resort to the court for its aid. He therefore made and filed an affidavit entitled in the action against the American Sugar Refinery Company, in which, after reciting the various proceedings and orders therein, including his appointment and qualification as receiver, he proceeded as follows:—

"That deponent, as such receiver, entered into possession of the American Sugar Refinery, and the property therein situate, in the city and county of San Francisco; that H. C. Mott and R. H. Sprague impede, hinder, and delay this deponent in the discharge of his duties as such receiver, and refuse to allow deponent to take into his possession and control certain property situate on the premises aforesaid; that said parties last-above named,

notwithstanding the receiver's possession of said premises, dispute his right to said possession and resist the full enforcement of the order and judgment of this court, and especially of the order hereinabove set forth. Wherefore this deponent prays this honorable court to give its order and direction to the sheriff of said city and county of San Francisco to enforce the orders and direction of this court as duly given and made in and by the order hereinabove set forth, and to do and perform all acts which may be necessary to place said receiver in complete possession of said American Sugar Refinery, and all and singular the property therein situated, and the property of said defendant of whatever character and wherever situated."

Immediately upon the filing of this affidavit of the receiver, and at about the hour of 1:30, P. M., of February 18th, Judge Wallace made and filed an order which, after reciting the previous proceedings, concludes as follows·—

" Now, you, the said sheriff, are hereby required to execute and enforce each and every, all and singular, the matters in said order appointing a receiver contained, in so far as may be necessary to place said receiver in possession, and to do and perform all acts which may be necessary to place Patrick Reddy, said receiver, in exclusive, full, and complete possession of the land and premises known as the American Sugar Refinery, situated at the southwest corner of Union and Battery streets, in said city and county of San Francisco, and of all and singular the property, real and personal, of said American Sugar Refinery Company, in said city and county of San Francisco. And you, said sheriff, are directed to make return of said order appointing a receiver, and of this order, within ten days after your receipt hereof, with what you have done indorsed thereon.

".WILLIAM T. WALLACE, Judge."

This order, which the superior judge and sheriff denominate a writ, was afterward, on February 28, 1890,

filed by the sheriff, with the following return indorsed thereon:—

"I, C. S. Laumeister, sheriff of the city and county of San Francisco, state of California, certify that the annexed and accompanying orders and writs, issued out of the superior court of the city and county of San Francisco, were placed in my hands at 1:45, P. M., on Tuesday, February 18, 1890. In obedience to the said orders and writ I proceeded to the premises designated therein, and found Patrick Reddy, who had theretofore been appointed by said honorable court as receiver in said action, in possession of said premises, in said orders and writ mentioned and described; that I found upon said premises certain persons who, I was informed, were interfering with the possession and enjoyment of said premises by said receiver; that I thereupon exhibited said order and requested said persons to retire from said premises, and that said persons thereupon retired from said premises described in said writ and order, and thereupon left said Patrick Reddy in the peaceful and undisturbed and undisputed possession of the land and premises known as the American Sugar Refinery, situated at the southwest corner of Union and Battery streets, in said city and county, with the appurtenances thereto belonging, and the fixtures therein, and all property, real and personal, appertaining thereto; that I also found said receiver in possession of the office of the American Sugar Refinery Company at No. 220 California Street, and I left him in possession thereof; that I also found said receiver in possession of an office and premises situated in the second story of a building, No. 124 California Street, which said office and premises were designated with the name, the American Sugar Refinery Company, and I left said receiver in absolute possession of said premises last-above described, and all of the premises and property hereinabove mentioned and described; that all of said actions and proceedings done, had, and performed by me, under

and in obedience to said orders and writ, were done, had, and performed, and completed at and before the hour of three o'clock, P. M., of said eighteenth day of February, 1890."

While these proceedings by and on behalf of the receiver were in progress, the petitioners were applying here for a writ of prohibition, and about the hour of two o'clock, P. M., February 18th, an order for the issuance of an alternative writ was made and filed.

The writ issued in pursuance of our order was served on the receiver about 3:30 o'clock, P. M., and upon Judge Wallace about six o'clock, P. M.

In their petition for the writ the petitioners set out the whole proceedings in the case of the *People* v. *American Sugar Refinery Company* down to and including the order appointing the receiver, and the order supplementary thereto. They allege that ever since the twenty-first day of March, 1889, they have been the owners in fee-simple in their own right of the several tracts and parcels of land in San Francisco, which they specifically describe, and upon which are situate the sugar refinery and the various shops and offices appertaining; that ever since said date they have been carrying on in said buildings the business of refining sugars for sale in the markets of California and elsewhere; that they, also, have offices, furniture, books, and other personal property used by them in and about said business; that they do not use, hold, or possess said property, or any part thereof, in trust, for the use or benefit of the American Sugar Refining Company, the defendant in the action referred to, or any of its directors, trustees, creditors, or stockholders, but solely for themselves, and for their own exclusive use and benefit, and have ever since said thirty-first day of March, 1889, been in the quiet and peaceable possession of the same, claiming title thereto and the exclusive ownership thereof; that since September, 1889, Henry C. Mott has been the general agent and

attorney in fact of the petitioners, in actual charge and custody of all of said property, and duly authorized to conduct said business.

They then allege the demands of Reddy to be let into the possession of said property, their refusal and resistance, the damage that would result from a stoppage of the works, and that Reddy is threatening to cause the arrest of said agent and the superintendent of the works for contempt of the superior court in resisting the said order.

They further allege that they have, through their said agent, Henry C. Mott, respectfully presented the foregoing facts to said superior court, and called its attention to the excess of jurisdiction by it committed in making said order, and in directing said receiver to enter upon and take possession and control of their said property; and that they have requested said court to modify its said order so as to direct him to bring a proper action for the recovery of said property instead of taking possession without action, which request they say said superior court has denied.

They further allege that said orders, so far as they authorize the receiver to take the property in their possession and claimed by them, are beyond the power and jurisdiction of the court, and in violation of their rights; that they are not parties to said action of the people against said American Sugar Refinery Company, nor did they make any appearance or participate in any respect in said action.

They further allege that, after said judgment against the Sugar Refinery Company, said company, on the 18th of January, 1890, had taken and perfected an appeal therefrom to this court, and had filed an undertaking sufficient to stay the execution thereof.

And, averring that they have no plain, speedy, or adequate remedy against said proceedings of the superior court in ordinary course of law, they pray "that a writ

of prohibition herein may be issued to said superior court of the city and county of San Francisco, department No. 6, and the judge thereof, commanding and directing said court, and said judge, and also its said receiver, Patrick Reddy, to desist and refrain from further proceedings upon the order aforesaid appointing its said receiver, and from exercising any of the powers in said order granted with regard to any property in the possession of said Havemeyers & Elder through their agents or employees, and especially said sugar refinery, and from interfering with or disturbing the possession and control of the said Havemeyers & Elder of the said sugar refinery, or any other property by them possessed and claimed in their own right."

The order made by us upon the filing of this petition directed the issuance of an alternative writ of prohibition to department No. 6 of the superior court of the city and county of San Francisco, and to Hon. W. T. Wallace, judge of said court, in accordance with the prayer of the petition, "commanding said court and judge, either through said Patrick Reddy, receiver, or otherwise, from taking possession of or interfering with the possession or control by said Havemeyers & Elder, through their agents, or otherwise, of any property, real or personal, in their possession, and claimed by them in their own right, and especially of the said property situate on the southwest corner of Union and Battery streets, in said city and county, and the refinery situate thereon, or from interfering with the agents and employees of said Havemeyers & Elder in the conduct of the business of the same, or from exercising any of the powers granted to said receiver in the order appointing him, so far as enforcing the same is concerned against said Havemeyers & Elder."

Said order further directed said court and judge to show cause on March 3d why said prohibition should not be made absolute and perpetual, and that in the

mean time, until further ordered, "all proceedings in said action upon the said order so appointing said receiver be stayed, so far as the said Havemeyers & Elder, and the property, real and personal, in their possession at the time said order was made appointing said receiver, are concerned."

The writ issued in pursuance of this order, in the name of the people and under the seal of the court, was, in substance, a repetition of the order, with some amplification of its terms, and not only the writ, but copies of the order and petition upon which it was founded, were served at the hours above mentioned on Judge Wallace and Mr. Reddy.

On February 25th, which was prior to the day upon which the respondent was required to show cause against the prohibition, affidavits were filed on behalf of the petitioners, alleging that the respondent and the receiver had committed a contempt of this court in proceeding under said order appointing the receiver contrary to the injunction contained in our order for the writ of prohibition; whereupon, we made and directed to be served upon Judge Wallace and Mr. Reddy another order, in which, after reciting the substance of the charge contained in said affidavits, we commanded them to show cause, on March 3d, why they should not be adjudged guilty of contempt, and why the receiver should not be compelled to withdraw and retire from the sugar refinery, and make restitution of the personal property which he had taken into his possession.

On March 3, 1890, Judge Wallace and Mr. Reddy appeared and answered in both proceedings, — the prohibition and the contempt, — and they were heard, argued, and submitted together.

It is not necessary in this connection to set forth in detail the matters contained in the answers of the respondent and the receiver. It is sufficient to say that the answer of Judge Wallace contains denials and aver-

ments, upon which he claims that his power and jurisdiction to appoint a receiver of the property of the American Sugar Refinery is complete, and also that he had the like power and jurisdiction in the action against the corporation to command and authorize the receiver to take the specific property described in his order, notwithstanding it was in possession of the petitioners, under claim of exclusive ownership.

As to the matter of contempt, Judge Wallace takes the position that the effect of our order for and writ of prohibition was simply to tie his hands and shut his mouth, so that he could not, without a violation of its terms, give any order or direction to the receiver whatsoever, or in any manner interfere with his proceedings; and he shows that he strictly adhered to this role of inaction. Mr. Reddy says that he and his counsel construed our order and writ in the same way, so far as it affected Judge Wallace, and therefore that he refrained from seeking any advice or direction from the superior court as to his own duties in the premises, relying in that matter wholly upon the advice of counsel, which he followed in good faith.

He says that he was advised,—and that such was his own opinion,—that the effect of the writ and order upon him was to confine him to the exact position in which they found him at the moment they were served. He contends that when the writ and order were served on him, he was in complete and absolute possession, to the exclusion of petitioners, of the sugar refinery, offices, shops, machinery and supplies, books, papers, etc., engaged in working up about fifty thousand dollars' worth of sugar then in solution, preparatory to shutting down the works, and that he did nothing except to retain the possession which he had, and to shut down the works as soon as possible.

From this general statement of the case, the nature of the questions to be decided is sufficiently shown.

We have nothing whatever to do with any question as to the validity, correctness, or propriety of the judgment of fine and forfeiture pronounced against the American Sugar Refinery Company in the action instituted by the attorney-general in behalf of the people of the state. For all the purposes of this case that judgment is assumed to be absolutely just and valid, though suspended by the appeal.

But conceding the perfect validity of that judgment, the question remains, whether the superior court had any jurisdiction to make the order appointing the receiver and directing him to take specific property from the possession of the petitioners, who were not parties to the action, and were claiming said property in their own right.

Subordinate to this main question are a variety of others, which have been elaborately discussed by counsel; as, for instance, whether prohibition is the proper remedy when the court has exceeded its jurisdiction in appointing a receiver; whether, conceding it to be the proper remedy in such case, the petitioners have complied with the necessary conditions of its issuance; whether the court should not, in the exercise of its discretion, refuse its aid to these petitioners, even if they have proceeded correctly in the matter of practice, and this not only because they have other plain, speedy, and adequate remedies, in the ordinary course of law, but principally because they are *participes criminis* with the corporation in the misconduct for which its charter has been forfeited.

There are still other questions involved in the matter of the prohibition, and then there are the questions arising in the proceeding for contempt.

We shall proceed to discuss such of these points as we deem material, in about the order in which they have been stated.

And, first, as to the power of the superior court to make the order complained of.

The appointment of receivers and their powers and duties are regulated by sections 564 *et seq.* of the Code of Civil Procedure. It is therein provided that a receiver may be appointed by the court in which an action is pending, or by the judge thereof, in various cases, and among others:—

"5. In the cases where a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights."

It is not necessary to refer to other grounds for the exercise of the power of appointment, because it is distinctly admitted by respondent and his counsel that the order here in question finds its sole support in the clause just quoted. The learned judge of the superior court, respondent here, in ruling upon the motion for a receiver, prepared and filed a written opinion, to which we have been referred as containing the essence of the argument on his behalf respecting the question under consideration, and we know of no better way to state the position for which he contends than to quote the opinion in full. It is as follows:—

"It was lately decided here that the corporation defendant had grossly abused its corporate franchise,— united itself with the Sugar Refinery Company in maintaining a monopoly of the article of refined sugar, destroying competition in its production, deteriorating its quality, and arbitrarily increasing its cost to consumers. Judgment of forfeiture of its corporate charter and the imposition of a fine of five thousand dollars followed.

"The attorney-general now applies for the appointment of a receiver of the corporate estate and effects.

"1. It is to be observed, *in limine*, that the application for a receiver in a case of this impression is not to be

dealt with as one made to a court of equity in the exercise of its preventive jurisdiction.

"The proceeding is for a *forfeiture*. That circumstance would of itself be fatal to an application made to a court of equity for a receiver; for equity never, under any circumstances, lends its aid to enforce a forfeiture or penalty, or anything in the nature of either.

"As observed by Chancellor Kent in *Livingston* v. *Tompkins*, 'It may be laid down as a fundamental doctrine of the court that equity does not assist the recovery of a penalty or forfeiture, or anything of the nature of a forfeiture.' (4 Johns. Ch. 431; 8 Am. Dec. 598.)

"The proceeding is now, as in its inception, distinctively *at law*, and, as observed by the learned counsel for the defendant, 'without a single incident of a court of equity connected with it'; the information in the nature *quo warranto* with which it began, the judgment which followed, and the present application for a receiver, are but the successive steps taken in an action at law, and therefore to be governed by rules of mere law, and wholly irrespective of equitable consideration.

"Whether the receiver shall be appointed is dependent upon a statutory condition of fact, — the fact that the corporation *has forfeited its corporate rights*.

"The Code of Civil Procedure, section 564, so far as pertinent to the case, is as follows: 'A receiver may be appointed . . . . when a corporation . . . . has forfeited its corporate rights.' And that the defendant is precisely in that category is the purport of the decision already rendered.

"Under the New York code, sections 1798–1801, a receiver is provided for *in the judgment itself;* under the California code, by an order entered subsequent to judgment. The difference is practically but one of sequence; the principle common to both statutes is, that an *ascertained forfeiture* implies a receiver. So it was substantially ruled in New York, in 1865, — the statute of that

state being then much the same as ours, — in *People* v. *Washington Ice Company*, that an application for a receiver, made by the attorney-general *before* forfeiture ascertained, was premature, and not to be entertained by the court.   (18 Abb. Rep. 383.)

" Recurring, then, to the statute of this state (Code Civ. Proc., sec. 564), the language is, that upon forfeiture a receiver *may* be appointed, etc.   Now, though the word ' may' is but permissive in ordinary signification, it here means ' must,'— a receiver *must* be appointed, etc.   That this is the settled rule of interpretation is pointed out in Potter's Dwarris, text and note, page 220.   It is there said as follows: '"May," in a statute, means "must" whenever . . . . the public have an interest in having the act done which is authorized by such permissive language'; again, ' Words of permission shall, in certain cases, be obligatory; when a statute directs the doing of a thing for the sake of justice, the word "may" means "shall."'   So in *Newburgh Turnpike Company* v. *Miller*, Chancellor Kent observed as follows: 'And in respect to statutes, the rule of construction seems to be that the word "may" means "must" or "shall," . . . . in cases when the public interest and rights are concerned, and when the public have a claim *de jure* that the power shall be exercised.'   (5 Johns. Ch. 113; 9 Am. Dec. 274.)

"That the public have an 'interest,' that the doing of a particular thing is 'for the sake of justice,' — change ' may ' to ' must'; convert a word of permission to one of obligation.   This principle is peculiarly applicable to the circumstances of this case.

" To guard the public interest and vindicate justice is the distinctive purpose of this proceeding by the attorney-general; to maintain that a corporation, as being but a creature of the law, must obey the law,— cannot be permitted to violate it with impunity; that its stockholders must respect the obligation they assume to the public when they sought and accepted their franchise at the hands

of that public; that they must observe the policy upon which the commercial police power of the state proceeds, —the policy which, notoriously disfavoring restraint of trade, absolutely forbids corporations to embark in monopoly in an article classed among the necessaries of human life, —these features characterize this as a case of grave public interest, and one in the vindication of which the court is bound to employ all the powers provided by the law, one of which is the power to appoint a receiver of the estate and effects of the delinquent corporation.

"2. Nor is this conclusion, founded as it is upon the text of the Code of Civil Procedure, already referred to, inconsistent with section 400 of the Civil Code, to the effect that stockholders in a dissolved corporation may, in the discretion of the court, be permitted to administer and wind up its business affairs.

"In my judgment, this provision has reference only to cases of *voluntary* corporate dissolution. A similar provision is found in the Revised Statutes of the state of New York (3769, sec. 77), and is there limited to cases of voluntary dissolution, as in the nature of things it ought to be here, under the true construction of our statute.

"In cases of voluntary corporate dissolution, the stockholders are without fault, — or may be, — therefore, the court has a discretion to permit them to hold and distribute the corporate assets; but this is not such a case. Here the corporate franchise has not been voluntarily surrendered, but has been forfeited because of the misconduct of the entire body of the stockholders already ascertained,—in fact become the distinct ground upon which the forfeiture proceeds.

"For, as pointed out in my opinion heretofore filed in this case, the *judgment* in this action, though in form one against the corporation, is in fact *against the stockholders,* who, as there said, were the actual owners of the corporate franchise, a forfeiture of which was adjudged.

The misconduct by which the corporate charter was lost was, therefore, the misconduct of the stockholders sued and making defense here by their corporate name, —American Sugar Refinery Company.

"As observed by Mr. Chief Justice Nelson in *People* v. *Kingston and Middletown Turnpike Road Company,* 'Though the proceedings by information be against the corporate body, it is the *acts* or omissions *of the individual corporators* that are the *subject of the judgment of the court.* The powers and privileges are conferred and the conditions enjoined upon *them; they* obtained the grant and agreed to perform the conditions,' etc. (23 Wend. 205; 35 Am. Dec. 551.)

"Upon this view it would indeed have been somewhat singular had the Civil Code conferred upon stockholders thus convicted of the breach of one important trust the immediate exercise of another trust, and one in itself of no slight importance,—the trust of administering and distributing the assets of the dissolved corporation. Such inconsistency is not to be attributed to that code. Beside, it will be seen, upon looking into the decisions at large, that such a practice has never been pursued by the courts. Stockholders whose ascertained misconduct has already operated a forfeiture of the corporate franchise have never been permitted to assume the administration of the corporate assets. Even in cases of voluntary dissolution, — cases in which no malfeasance of the stockholders appeared, — inquiry has often been made by the court as to whether the dissolution had in point of fact been brought about by the misfeasance or mismangement of the particular person seeking to become a trustee of the corporate affairs. I must therefore decline to permit the offending stockholders here, or their nominees, to become the trustees of the corporate assets.

"3. But one other question remains to be considered, which will now be stated.

"An appeal from the judgment of forfeiture has been taken, — taken and perfected in such a form as to stay the judgment, pending the appeal, *if that be possible.* The judgment was rendered here on the sixth day of January; on the 8th, this application for a receiver was made and set down for hearing on the 10th; was actually heard on the twentieth day of January; the appeal was taken on the 18th, while the application was yet pending, and some two days before it was submitted for decision.

"It is now claimed that the *judgment is stayed* by the appeal, and that, *as a consequence of such stay,* the power of the court to appoint a receiver has ceased.

"But, in my opinion, no appeal, in whatever form it be taken, can operate a present stay of a judgment of the character of the one rendered in this case. To hold that it can is to imply that a corporation already dissolved for ascertained corporate abuses may by this means practically rehabilitate itself at pleasure, — resume its proper corporate existence, — despite the judgment, and so continue its misemployment of its franchise for an indefinite period of time. The correctness of a construction leading to such results may well be doubted.

"But waiving this, and assuming that the judgment has been stayed by the appeal taken, it would not follow that the authority to appoint has been superseded because of the appeal. The subject of appeals, as well as their effect when taken, is governed by the Code of Civil Procedure (sec. 946). An appeal 'stays all further proceedings . . . . upon the judgment, . . . . or upon the matters embraced therein; . . . . but the court . . . . may proceed upon any other matter embraced in the action,' etc.

"That the appointment of a receiver is a matter 'embraced *in the action*' has already been pointed out in connection with section 564 of the same code; the appeal from the judgment does not suspend the power to

appoint, unless the appointment be a matter embraced *in the judgment,* which it is not (as upon inspection of the judgment will appear), or is itself distinctively a proceeding '*upon the judgment.*' That the appointment of a receiver in a cause is not a proceeding *upon* the judgment in that cause, but is merely ancillary in character, is understood to have been often ruled in our courts. It is not necessary for me, however, to cite the cases nor to enter now upon an analysis of the text of the statute, because I consider the recent ruling in Baughman's case 72 Cal. 572, as directly in point in support of the power. An appeal from the judgment had been taken in that case, yet the authority of the court *over the general subject of receivership* appears to have been upheld, notwithstanding the pending appeal from the judgment. In that case it was the power to *remove* which was immediately in question; here it is the power to *appoint;* but these powers must co-exist; any construction of the statute which would uphold either must necessarily uphold the other.

"The conclusion reached is, that the application must be granted, and a receiver appointed; an order to that effect will now be entered.

"WILLIAM T. WALLACE, Judge.

" Dated February 17, 1890."

As we cannot accept the conclusions reached in this opinion, we will state as briefly as possible in what we think their unsoundness consists.

The assumption which forms the basis of the entire argument is, that the appointment of a receiver to administer its assets is one of the penalties designed, and in effect prescribed, by the legislature as part of the punishment to be visited upon the stockholders of a corporation, which by any misconduct of its own has incurred a forfeiture of its charter.

There is, in our opinion, little to justify this assumption, even in the statutes of New York, upon the supposed

construction of which so much reliance is placed. But if such were the declared or plainly implied policy of that state, the significant fact remains, that our statutes not only contain no semblance of such a declaration, but that our legislature, in framing the law of this state, while looking to the statutes and codes of New York for a model and guide, has deliberately rejected every provision from which such an implication might arise, and in place thereof has substituted one of opposite import.

In order to a due appreciation of the force and meaning of these statutes, it is necessary to consider, for a moment, the subject with which they deal.

When a corporation ceases to exist, from whatever cause, whether from lapse of time, voluntary dissolution, or judgment of forfeiture for neglect or abuse of its powers, it necessarily results that its property is left to be disposed of according to law. Even in those times when the doctrine prevailed that such of its property as did not revert to its grantors was forfeited or escheated to the crown, some officer exercising a general authority under the common law or statutes, or invested with a special authority for the occasion, was charged with the duty of collecting the assets for the benefit of the king, or his donee; and since it has come to be recognized everywhere that, upon the dissolution of a trading corporation, its property neither reverts to its grantors nor escheats to the state, but belongs, after payment of its debts, to those who were stockholders at the date of dissolution, the appointment of some officer with the same or more minutely defined authority is a recognized necessity. Some means must be provided for winding up the corporation and distributing its assets according to the equitable rights of those interested. In the absence of any statute regulating the matter, a court of equity would have the undoubted right, in a proper proceeding instituted by a creditor or a stockholder, to appoint a receiver to administer the property. But in many of

the states, statutes have been passed expressly providing for the appointment of receivers, or trustees exercising the same functions, though sometimes called by other names.   In all cases it is made their duty to collect the assets, pay the debts, and distribute the surplus *pro rata* to the stockholders.   As this is precisely what a court of equity would have done in the absence of a statute, it is to be inferred that the motive of such legislation has been to accomplish some other object, — some object, that is to say, for which express legislation was necessary.   This inference is fully justified and amply borne out by reference to the different statutes.   They seem to have been enacted with the object, in some instances, of abrogating the old law of forfeiture, and reversion; in others, of committing the administration to other courts than courts of equity; in others, to provide general and uniform rules of procedure, as to giving notice to creditors, etc., to take the place of rules of court and specific orders to be made by the chancellor in each particular case; in others, to keep the matter out of the courts altogether, as by allowing the dissolved corporation to continue its existence for a term for purposes of liquidation, but for no other purpose.   The whole mass of this legislation seems to be pervaded by the one idea of simplifying, expediting, and cheapening the means of accomplishing the one object of transferring to the stockholders of a defunct corporation their full share of its surplus assets. There is, from beginning to end, no suggestion of added penalites or punishment after death.

Now, to revert to the New York statutes in force at the date of the decision in *People* v. *Washington Ice Company*, cited in the opinion of Judge Wallace.   They provided, as ours do, for both voluntary and involuntary dissolution of corporations, and in express terms directed the appointment of receivers in all cases, whether voluntary or involuntary; they also contained minute and specific directions as to the duties of receivers, notice to

creditors, fees and commissions, settlement of accounts, etc., very similar to our statutes regulating the proceedings of executors and administrators.

The object of such legislation is apparent, and clearly it is not the infliction of penalties, but merely the conservation of rights.

In view of these provisions of the New York statute, it is difficult to see how the general principle can be deduced from the decision referred to that "*an ascertained forfeiture implies a receiver.*"    That was not the question litigated in the case, and was not decided.    The point decided was, that in an action to forfeit a charter a receiver could *not* be appointed until after judgment dissolving the corporation; in other words, that there is no forfeiture in the sense of the statute until the judgment of dissolution is entered.    All that this implies is, that after judgment a receiver *may*, not that he *must*, be appointed, and therefore the implication falls short of what the statute under consideration expressly enjoined, viz., that it should be "*the duty of the attorney-general, immediately after the rendition of such judgment* [of forfeiture], *to institute proceedings for that purpose*" (the appointment of a receiver).    (Voorhies' Code, sec. 444.)

Nothing, therefore, can be gained for the argument by reference to this decision.    It merely construes the New York statute on a point not in controversy here.    And even if it had been otherwise, the question would have remained, whether our law is the same in substance as the law of New York.

The opinion of the superior court assumes that it was "much the same as ours."

We think, on the contrary, that the points of difference between our law and that of New York are much more striking and manifest than the points of resemblance.    The laws of New York, it is true, recognize, as our laws do, and as, in the nature of things, every law on the subject must, the necessity of providing some

means of administering the assets of a defunct corporation, and the propriety, in the absence of other provision, of appointing a receiver for that purpose; but there the resemblance ends.   In New York, as we have seen, there was no other provision, and the appointment of a receiver was made obligatory in all cases of dissolution, whether voluntary or involuntary.   That was the rule, to which there was no exception.   Under our codes, on the contrary, the rule is not to appoint a receiver, but to leave the whole matter of liquidation and distribution to the exclusive control of the directors of the corporation in office at the date of dissolution.   The appointment of a receiver is the exception, not the rule, and is not to be made unless some party interested, either a creditor or a stockholder, can show that for the protection of his rights the appointment of a receiver and the administration of the assets under the control and superintendence of a court of equity is necessary; and even then no receiver will be appointed upon his *ex parte* application without requiring ample security by his undertaking with sufficient sureties for all damages that may be caused by the appointment if it shall turn out that it was made without sufficient cause.

In support of this statement we refer to the following provisions of the codes:—

Sections 399 and 400 of the Civil Code are as follows:—

"Sec. 399.   The dissolution of corporations is provided for: 1. If involuntary, in chapter 5 of title 10, part 2, of the Code of Civil Procedure.   [Secs. 802, 810.]   2. If voluntary, in title 6, part 3, of the Code of Civil Procedure.   [Secs. 1227–1233.]

"Sec. 400.   Unless other persons are appointed by the court, the directors or managers of the affairs of such corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full power to settle the affairs of the corporation."

Sections 565 and 566 of the Code of Civil Procedure are as follows: —

"Sec. 565. Upon the dissolution of any corporation, the superior court of the county in which ·the corporation carries on its business or has its principal place of business, on application of any creditor of the corporation, or of any stockholder or member thereof, may appoint one or more persons to be receivers or trustees of the corporation, to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the corporation, and to pay the outstanding debts thereof, and to divide the moneys and other property that shall remain over among the stockholders or members.

"Sec. 566. No party or attorney or person interested in an action can be appointed receiver therein, without the written consent of the parties, filed with the clerk. If a receiver be appointed upon an *ex parte* application, the court, before making the order, may require from the applicant an undertaking, with sufficient sureties, in an amount to be fixed by the court, to the effect that the applicant will pay to the defendant all damages he may sustain by reason of the appointment of such receiver and the entry by him upon his duties, in case the applicant shall have procured such appointment wrongfully, maliciously, or without sufficient cause, and the court may, in its discretion, at any time after said appointment, require an additional undertaking."

It will be observed that section 399 of the Civil Code refers to those parts of the Code of Civil Procedure which provide for involuntary as well as voluntary dissolutions, and that section 400, by its terms, applies as well to one kind of dissolution as to the other. By its own unaided force, without the intervention or any necessity for the intervention of a court, it makes the directors managers of the affairs of the corporation and trustees for the creditors and stockholders, with full power of settlement.

These trustees, like trustees in general, are of course amenable to the jurisdiction of a court of equity, and may be called to account there for any neglect of duty or abuse of power. But until they are so called to account in an independent action or proceeding by a party in interest, no court has any excuse for interference; and if they are sued and brought into court without sufficient cause, even by a creditor or stockholder, they will recover costs.

But in the opinion of the superior court these provisions of our statutes are, upon their true construction, to be limited to cases of voluntary dissolution. It seems to us that the terms of the law are too plain in an opposite sense to admit of construction, and even if it were otherwise, that the reasons given for the construction adopted are wholly insufficient. In section 399 of the Civil Code, separate reference is made, first, to cases of involuntary dissolution, and second, to cases of voluntary dissolution. Then, right on the heels of this reference follows the provision for the settlement of the affairs of "*such corporation.*" If it was the intention of the legislature to limit this provision to cases of voluntary dissolution, nothing could have been easier or more natural than to say so. And if it were true that this section of our code is similar to the section cited from the Revised Statutes of New York (3769, sec. 77), and that that section is limited to cases of voluntary dissolution, the fact that our legislature has adopted the provision without the limitation would be a strong circumstance indicative of an intention to make its operation general.

But in truth the two sections are not substantially the same. Section 400 of our Civil Code, as is apparent, provides a means of settlement of the affairs of a dissolved corporation without the intervention of a court, unless such intervention is specially invoked, and that is its whole scope. The section cited from the Revised Statutes of New York is part of a scheme in which the

rule is to appoint a receiver in all cases; and it merely provides that any of the directors, trustees, or other officers of such corporation, or any of its stockholders, may be appointed receivers. It is not by any means clear, moreover, that this provision was limited to cases of voluntary dissolution. It is true that it is found in an article relating to voluntary dissolutions, but that article is by reference made part of the law of involuntary dissolution. The very section of the New York Code of Civil Procedure, section 444, which enjoins upon the attorney-general the duty of applying for a receiver whenever the charter of a corporation has been forfeited at the suit of the state, makes the article relating to voluntary dissolutions the measure and limit of the power of the court " *to restrain the corporation, to appoint a receiver of its property, and to take an account, and to make distribution thereof among its creditors*"; from which it is perfectly evident that the legislature of New York intended no discrimination against the stockholders of a corporation which had forfeited its charter by misconduct; for if they were to enjoy every advantage in the management and distribution of their property that the law afforded to stockholders in corporations voluntarily dissolved, how can it be claimed that the law was framed with a view to punishment in one case, unless that was its object and effect in all cases?

It is therefore plain that if any foundation exists for the notion that the appointment of a receiver, in case of a forfeited charter, is part of the punishment prescribed for the offenses of the corporation, that foundation must be sought elsewhere than in the statutes and decisions of the state of New York.

Where, then, is it to be found?

The first general consideration suggested in the opinion of the superior court is, that "it would indeed have been somewhat singular had the Civil Code conferred upon stockholders thus convicted of the breach of one

important trust the immediate exercise of another trust, and one in itself of no slight importance,—the trust of administering and distributing the assets of the dissolved corporation. Such inconsistency is not to be attributed to that code."

We admit that no inconsistency should be attributed to the law; but before we construe a section of the code contrary to its obvious meaning, we should be very certain that such construction is necessary, in order to prevent a conflict with some other provision of controlling force, or some legal principle of general application. It is not pretended that the literal purport of section 400 of the Civil Code and section 565 of the Code of Civil Procedure conflicts with any other statutory provision; but the idea seems to be, that it is absurd to suppose that the legislature would have left to the directors of a corporation convicted of violating their duty to the people of the state the power and discretion to pay their own debts, and divide their own property, subject to the right of a court of equity to interfere and compel them to proceed properly, if any occasion for such interference should arise.

We confess that there does not appear to us to be any absurdity in this supposition. Because a corporation has violated its duty to the public, it does not follow that its members cannot be trusted to look out for their own interests. Quite the contrary; for it is usually a too exclusive regard for their own interests that constitutes their dereliction to the public. As to creditors, their interests must in most cases be opposed to the appointment of a receiver. They will be paid more quickly and more certainly without a receiver than with one. If there is any one thing more certain than another, it is that the appointment of a receiver implies a material diminution of the fund out of which creditors are to be paid. For, in the first place, the fees of the receiver, his counsel, and assistants, are to be subtracted. Then the est

must, in many cases, as it has been in this case, be condemned to unproductive idleness and disuse, and exposed to danger of loss and dilapidation from rust and decay during the long and tedious progress of the legal proceedings that are necessarily entailed. And all this time the creditors must wait and look on, while the fund upon which they rely for payment is being depleted by the processes above referred to. On the other hand, supposing the affairs of the defunct corporation to be under the control of its late directors as trustees for its creditors and stockholders, the creditors have nothing to do but present their demands and receive payment in the ordinary course of business, or if payment is refused or delayed, they may proceed to enforce their demands. How much better this is for the creditors than to have to wait upon the motions of a receiver and the court, under whose order he acts, every one knows who has had any experience of the two methods of settling the business of a partnership or a corporation. And then it is, as we have seen, always at the option of a creditor or stockholder to have a receiver, if they can allege facts showing that a receiver is necessary.

So far, therefore, as the rights and interests of the sole beneficiaries of the trust are concerned, there is no need to construe section 400 of the Civil Code and section 565 of the Code of Civil Procedure contrary to their express terms, in order to rescue the legislature from the imputation of having enacted an absurdity.

On the contrary, the rule which they prescribe, according to their natural and obvious construction, by which they apply as well to cases of forfeiture of charter as to cases of voluntary dissolution, is most salutary, so far as the beneficiaries are concerned, and such construction must prevail, unless, indeed, it be true that the paramount interests of the people of the state demand a different construction.

This proposition that the people of the state have an

interest in the appointment of a receiver, whenever the charter of a corporation has been forfeited, was decided adversely to the contention of the respondent at an early stage of these proceedings in ruling upon a preliminary objection made by counsel for the state, who appeared specially for that purpose, — an objection founded upon a clause of the twenty-eighth rule of this court, which reads as follows: "In case any court, judge, or other officer, or any board or other tribunal, in the discharge of duties of a public character, be named in the application as respondent, the affidavit or petition shall also disclose the name or names of the real party or parties, if any, in interest, or whose interest would be directly affected by the proceedings, and in such case it shall be the duty of the applicant obtaining an order for any such writ to serve, or cause to be served, upon such party or parties in interest a true copy of the affidavit or petition, and of the writ issued thereon, in like manner as the same is required to be served upon the respondent named in the application and proceedings, and to produce and file in the office of the clerk of this court the like evidence of such service."

Neither the petition nor the writ herein was served upon the state or its attorneys, and the objection made in behalf of the state was, that the hearing could not proceed, and that the alternative writ must be quashed, for the reason that it appeared on the face of the petition that the state was the real party in interest, or whose interest would be directly affected by the proceedings.

The court, however, were unanimously of the opinion, and so decided, that the state had no interest to be affected, and that the only persons interested were the creditors and stockholders of the corporation. It must be confessed, however, that when this ruling was made we did not understand, and of course did not consider, the real position of respondent with respect to this

matter. It did not occur to us, and if the point was suggested in the course of the argument upon this preliminary objection, it failed to impress us at the time, that any person could have an interest in the appointment or removal of a receiver, except those who would be entitled to share in the distribution of the fund committed to his control; and as it was conceded that the state had no interest in the fund, we naturally concluded that the interests of the state could not possibly be affected by any result of these proceedings, and ruled accordingly.·

But in the light of the fuller argument made at and since the hearing, we perceive that the real claim of the state remains to be stated and considered.

Before, however, proceeding to this discussion, we take occasion to say a few words as to the proper construction of the rule of court above cited. It does not, as counsel seem to suppose, require that the state should have been made a formal party to this proceeding, by being named as a defendant in the petition or writ, but only that the names of the parties really interested should be disclosed by the petition, and that service of a copy of the petition and writ should be made upon them. (*Baker* v. *Superior Court,* 71 Cal. 583.)

The effect, therefore, of a failure to serve such parties would not be an abatement of the whole proceeding, but, at most, to require a postponement of the hearing or trial until they could be served and have a reasonable time to appear.

On the face of the petition in this case, it did not seem to us that the state could have any interest in the controversy over the appointment of the receiver. If it had been otherwise, it would perhaps have been our duty in advance to order service of the petition and writ upon the representatives of the state, and certainly we should have been bound, of our own motion, to require proof of such service before proceeding with the hearing of

the rule to show cause; or if, on the hearing, the fact had been developed that a party not named or served had an interest to be affected, it would have been our duty to suspend the proceeding ·until such party was served and brought in.   As it was, however, we were proceeding properly with the hearing when the objection of the state was interposed.   The motion made to quash the alternative writ was not sustainable upon any view of the state's rights or interest in the matter, and after listening to the argument then advanced in support of the state's claim of interest, and its right to the benefit of the rule, we decided that the claim was unfounded, and that the rule did not apply.

But if we had then understood, as we now understand, the ground upon which the state bases its claim of interest, we should probably have ordered service of the petition and writ on the attorneys of the state, and should have allowed them in that capacity to take part in the subsequent proceedings.

No harm, however, has resulted from our misconception of the state's position.   Although there was no service of notice upon its attorneys, *eo nomine,* such service was made upon the judge of the superior court, who has been formally represented throughout these proceedings by one of the attorneys of the state, and actually by both of them.   The whole object of the rule, therefore, has been fulfilled so far as the state is concerned, the only difference being that its attorneys have had only one copy of the writ and petition instead of two, and that they have been compelled to speak in the name of the superior judge, instead of that of the state. But in his name and upon his behalf they have presented every argument and raised every issue which could have been made in behalf of the state if it had even been a formal party to the proceedings, which, as we have seen, the rule does not require.

We will now return from this digression to consider what those arguments are.

It will be seen, by reference to the opinion of the superior court, above quoted, that the provision of section 564 of the Code of Civil Procedure, to the effect that a receiver *may* be appointed when a corporation has forfeited its charter, is construed to mean that in such case a receiver *must* be appointed, and this because the public has an interest that the power should be exercised. To our minds it is perfectly clear that the true construction of this clause of section 564 is found in the very next section of the code, wherein it is specifically enacted that " upon the dissolution of any corporation, the superior court of the county in which the corporation carries on its business, or has its principal place of business, *on application of any creditor of the corporation, or of any stockholder or member thereof,* may appoint one or more persons to be receivers," etc. Here is an express enumeration of the parties, and the only parties (*expressio unius est exclusio alterius*), whose interest demands that *may* should be read *must;* and considering this language in connection with section 400 of the Civil Code, which, as we have seen, provides that the directors in office at the date of its dissolution shall settle the affairs of a corporation, unless some other persons are appointed, we should never have thought of looking further for a definition of the circumstances under which a receiver could be appointed. In terms, both sections apply as well to cases of involuntary as to cases of voluntary dissolution, and they do in fact provide a most salutary rule for the protection of all persons interested in the property. But it is held that they must be construed out of their obvious sense, and limited in their application to cases of voluntary dissolution, because, and only because, in cases of forfeiture for corporate misconduct, the stockholders cannot be adequately punished or restrained without the intervention of a

receiver, and, consequently, that the interest of the public, in the imposition of such punishment and restraint, requires the conversion of "may" into "must," thus making the appointment of a receiver obligatory in all cases of forfeiture.

This proposition, which is, in effect, stated in the opinion above quoted, is much more plainly and directly put in the argument made by the respondent here. He asks if it is possible that this controversy between the state and a concern with millions of capital is limited to the imposition of a fine of five thousand dollars, and the cancellation of a charter the duplicate of which can be obtained while we are talking here, and he answers his own question as follows: "I understand the great interest of the state is to break down the monopoly. To do that, it seizes the means and utensils,—the business with which the monopoly has been proceeding. It scatters it. It divides it up. A receiver is appointed for that purpose. That is part of the penalty. That is a part of the penalty provided by law because they have forfeited their corporate rights,—no other reason."

Translated into terms specifically applicable to the case before us, the meaning of this is, that if a corporation organized for the purpose of refining sugar enters into a combination with other corporations, through the medium of what is called a trust, for the purpose of limiting the production and keeping up the price of refined sugar, the courts will not only forfeit its charter and impose the utmost fine which the law prescribes for such offenses, but they must go further, and by the hands of a receiver seize into their possession all the property of the defunct corporation, and especially its sugar-refining plant, not for the purpose of preserving and protecting it, and as speedily and economically as possible distributing it to those who are equitably entitled, viz., creditors and stockholders, but for the quite opposite purpose of shutting it up and condemning it to rust and idleness

until such time as it can be unfitted completely for the purpose to which it is best adapted by dividing it up and scattering it. We confess that this is to us a novel doctrine, and one which does not, upon any ground, commend itself to our judgment.

It may not be the rule in this state to construe penal legislation strictly, but even here, when a court is asked to impose a penalty for infraction of a law, the first inquiry is, What penalty does the law prescribe? The answer to this question is sought, not in labored construction of other statutes, but in the express term of the act defining the offense.

Now, what is the case here? In section 803 of the Code of Civil Procedure, the legislature has enjoined upon the attorney-general the duty of bringing actions for the forfeiture of corporate franchises whenever he has reason to believe that they are unlawfully held or exercised. This was his sole authority for bringing his *quo warranto* against the American Sugar Refinery Company, and it is upon this chapter of the code that the judgment of forfeiture depends. Section 809, in the same chapter, defines the character of the judgment that must be rendered when the defendant is found guilty, viz., that the defendant be excluded from the franchise it has abused, and "the court may also, in its discretion, impose upon the defendant a fine not exceeding five thousand dollars, which fine, when collected, must be paid into the treasury of the state." This is absolutely all the punishment that the legislature has in terms prescribed; and if any other was intended, especially if such other punishment was designed to be severe beyond comparison with that expressly defined, it is passing strange that the courts should have been left to work it out by a doubtful construction of other parts of the codes.

But, to our minds, the gravest objection to the doctrine lies in the consequences which it involves. Obviously,

there is no measure or limit to the punishment which may be inflicted in the manner indicated, except in the discretion of the court and the moderation of its receiver.   The duty of the receiver is not conservation, but destruction.   In whatever business the offending corporation may have been engaged, his first step must be to shut up its works; however vast the capital invested, it must be condemned to lie idle and unproductive until it can be divided up and scattered.   It must not be sold as a whole, complete and adapted to the work for which it was designed, and for which alone it possesses any considerable value.   To do so would defeat the whole object of the receivership; for not only would the offending stockholders get off without adequate punishment, but there would be nothing to prevent them from buying in their own property and again putting it into the combination.   It must, therefore, be divided up and scattered, and its value in great measure destroyed. The stockholders, when they finally realize upon their property, must be content to receive, not the proceeds of a well-appointed manufactory in complete running order, but the price of a lot of old iron and second-hand machinery, sold in lots according to the discretion of a receiver, acting with a view, not to their interest as stockholders, but solely with a view to the interest of the public in punishing them.

We cannot assent to a doctrine involving such consequences.   If it is really true that our laws, as they are written, provide no adequate punishment for corporate transgressions, let the legislature take the matter in hand.   It is no part of the function of a court to supply the want of penal legislation.   Its judgments in such case, beside being wholly unauthorized, would always operate as bills of attainder or *ex post facto* laws, both of which are not only abhorrent to our ideas of justice, but are expressly forbidden by our charters of government.

But perhaps it is not fair to regard the doctrine under

discussion as implying that the primary object of the laws, as it construes them, is the punishment of the stockholders. It may be said that the real purpose is only to break up the monopoly, and that the punishment involved is merely incidental and unavoidable; that it is right to break up the monopoly, and if, unfortunately for them, the stockholders suffer in the process, they have themselves alone to blame.

Regarded from this point of view, it seems to us that the doctrine is still wholly indefensible. When a corporation is dissolved, its property, as we have seen, vests in its stockholders, subject only to the claims of creditors, and is thereafter held upon the same tenure and subject to the same conditions as similar property owned by other natural persons. What others may do they may do. They owe no further or higher duty to the public, and are under no other restraints. Therefore, unless some ground can be shown upon which the state can take a sugar refinery away from a private citizen who has inherited it, or bought it, or built it, and can shut it up preparatory to dividing and scattering it, upon the ground that he has entered into an agreement with some other private citizen owning another refinery, to limit the output of both establishments with a view to keeping up the price of the refined product, no ground can be shown which will warrant the state in taking similar property from natural persons who have succeeded thereto on the death of a corporation.

Confessedly, there is no warrant to be found for such a proceeding in case of a natural person.

That contracts in restraint of trade are unlawful, or, at least, opposed to the policy of the law, is conceded, but the only penalty they entail is, that courts refuse to enforce them, just as they refuse to enforce any contract which is opposed to public policy or good morals; but no one ever heard of a proceeding to confiscate or destroy, either wholly or partially, the property which is the sub-

ject of such a contract.  So far the legislature has seen fit to attach no other punishment to contracts of natural persons in restraint of trade than to make them non-enforceable; and where the legislature has stopped, it is not only becoming, but necessary, that the courts should stop.

As to the property of a corporation, the legislature has given no indication of an intention to forfeit it or take it away from the stockholders, except to the extent of a fine of five thousand dollars, which the court is authorized in its discretion to impose.  What is forfeited to the state, and all that is forfeited, is the charter,—the right to be a corporation; and this is resumed solely upon the ground that the condition upon which it was granted has been violated.  The doctrine is, that corporate charters are granted upon the implied condition that the privileges conferred will be used for the advantage, or at least not to the disadvantage, of the state.  If this condition is broken, the charter which the state has given is taken back by the state; but the property which the corporation has acquired with its own means goes to those who have paid for it, and they have the right to deal with it just as others similarly situated may deal with their property.  Whatever the law prevents other natural persons from doing they are prevented from doing,—nothing more.

This doctrine is plainly enough indicated in the case of *People* v. *North River Sugar Refining Co.*, 22 Abb. N. C. 164, cited and relied upon by respondent, and in the cases therein referred to, and it is shown, moreover, in those cases, that the privileges and powers of a corporation are essential to membership of the trust and to any effective monopoly.  To become a member of the trust, the sugar refiner must be a corporation, and the corporation being dissolved, it is impossible that its stockholders should keep up the arrangement.  And so as to monopolies in general, they are only dangerous when corporations are the parties to the agreement by which

they are attempted.     (*Leslie* v. *Lorillard,* 110 N. Y. 519.)
At least this is the opinion of some courts, and it sug-
gests a reason why the legislature has omitted to pre-
scribe any penalty beyond non-enforcement in case of
such agreements between natural persons.     But we need
not speculate upon these matters.     The law being plain,
we are not concerned with its expediency.

The conclusion which inevitably follows from these
views is, that, in an action under sections 802 et seq. of
the Code of Civil Procedure, the rendition of the judg-
ment authorized by section 809 ends the proceedings so
far as the superior court is concerned, and that no re-
ceiver of the corporate property can be appointed unless
a new and distinct proceeding is commenced by a cred-
itor or stockholder of the corporation.     (Code Civ. Proc.,
sec. 565.)

Such new and distinct proceeding upon the part of the
beneficiaries, or some of them, is the essential condition
of any jurisdiction in the court to take the property out
of the control of the trustees designated by law.     (Civ.
Code, sec. 400.)     An order appointing a receiver with-
out such application is, therefore, void, not only as to
strangers to the *quo warranto,* but is even void as to the
corporation and its stockholders and vendees.

We have no doubt of the correctness of this conclu-
sion; but if we were wholly mistaken in our views, and
if it were true, as held by the respondent, that the ap-
pointment of a receiver for the purpose of inflicting one
of the penalties designed by the law and essential to its
efficacy is obligatory, we cannot see how it is possible to
avoid the conclusion that the enforcement of this as
well as other parts of the penalty was suspended by the
appeal from the judgment.

According to the plain and unambiguous terms of the
statute, proceedings upon any appealable judgment or
order may be stayed by the filing of a sufficient under-
taking, except in a few enumerated cases, of which this

is not one. (Code Civ. Proc., sec. 949.) Confessedly a sufficient undertaking was filed in this case to stay the judgment, *if that was possible.* (Opinion of Judge Wallace, *supra.*)

But it is held, in the face of the statute, that a stay was not possible, and this, again, upon the plea of necessity, in order to prevent an apprehended abuse. We do not think the reason suggested is sufficient to override the law. The allowance of an appeal in such cases implies the right of the corporation to question the validity of a judgment of forfeiture until it has been affirmed here; and it is not correct to say that a stay of proceedings would operate a rehabilitation of a dissolved corporation, when the sole object of the appeal is to determine the question whether there has been a valid judgment of dissolution.

But evidently the respondent was unwilling to stand upon the proposition that a stay was not possible. Waiving that, and assuming that the judgment has been stayed, he concludes that the power to appoint a receiver is nevertheless not suspended because the order of appointment is not embraced in the judgment, and is not a proceeding upon the judgment. It is true that the order of appointment is not embraced in the judgment; but that is not the test. An execution is not embraced in the judgment, but an appeal duly perfected stays execution. In truth, it is not correct to say that a judgment or matters embraced in a judgment are stayed by the appeal, and the statute does not say so. What it says is, that *proceedings upon* the judgment and matters embraced therein are stayed by the perfecting of an appeal. (Code Civ. Proc., sec. 946.) That is to say, the execution — the enforcement — of the judgment is suspended.

Now, here it is conceded that no receiver of the corporation could be appointed until after judgment, and that the only purpose of his appointment is to carry the judgment into effect, — by taking away the property of

the corporation and scattering and dividing it. How, then, is it possible that this is not a proceeding upon the judgment? According to the argument, the things to be done by the receiver constitute the only substantial and effective punishment which it is in the power of the state to inflict; the rest is a mere trifle. But it is, neverthe- less, held that this ruinous penalty which follows the judgment, and but for the judgment could never be in- inflicted, is not a proceeding upon the judgment, and therefore is not stayed by the appeal. And this conclu- sion is rested upon the authority of rulings which it is said have often been made by our courts.

Undoubtedly it has often been held that the appoint- ment of a receiver is merely ancillary, and undoubtedly his appointment often is merely ancillary; that is to say, he is appointed before judgment for the purpose of pro- tecting, pending the litigation, property which is the subject of the litigation. But sometimes he is appointed after judgment for the purpose of carrying the judgment into effect; in which case his appointment and his pro- ceedings thereunder are not merely ancillary. In the former case his functions are not necessarily suspended during the appeal, and neither is the power of the court to remove him or control him suspended by the appeal. But in the latter case—as, for instance, where a receiver has been appointed to sell mortgaged premises under decree of foreclosure — his proceedings are suspended by the appeal.

The only case cited by respondent — a case supposed to cover the whole ground and to conclude the question — is that of *Baughman* v. *Superior Court*, 72 Cal. 572, which was of the former class.

There the litigation was about the right to certain grain described in the pleadings. Upon the filing of the complaint, and upon the *ex parte* application of the plain- tiff, the court appointed a receiver to take charge of the grain, pending the action, to preserve it for the benefit

of the party who might prove to be entitled to it.   The defendant demurred to the complaint; his demurrer was sustained, and final judgment entered in his favor, from which plaintiff appealed to this court.   After the appeal was perfected, the superior court discharged the receiver, and this court decided that the power of the superior court to do so was not suspended by the appeal.   We do not doubt the correctness of that decision; but we are unable to see the resemblance between the case where a receiver is appointed before judgment, to preserve property pending the litigation, and one in which he is appointed after judgment, to dispose of the property in order to make the judgment effective.   We know of no case that comes nearer supporting the proposition to which it was cited than this case, and we feel certain that there is as little to support it in the rulings of our courts as in the text of the codes.

As to considerations of expediency, they should not weigh when the law is plain; but if we were to look to the consequences of the doctrine contended for, we should find therein nothing to commend it.

We assume, for every purpose of this decision, that the judgment of forfeiture in this case was not only just, but legal; correct not only in substance, but in form, — free from error.   But it does not follow that all similar cases will be equally well decided.

It is possible — the constitution and the laws assume the possibility — that some case may arise in which the judgment of forfeiture will be not only erroneous, but unjust, and that it will be reversed on appeal.   But the rule applied in this case must also be applied in that case.   If this judgment must be executed in the manner indicated, so must that.

A receiver *must* be appointed; he must seize all the property; he must shut up the factories, discharge the employees, prevent the fulfillment of contracts, subject the corporation to every sort of loss and damage that can

be inflicted by the stoppage of a great and complicated industry having its ramifications throughout the business centers of the entire coast. And not only this, for if he must go to this extent, —if nothing the corporation or its stockholders can do will stop him,—then nothing but the forbearance of the superior judge will prevent the completion of the process.

For this injury caused by an erroneous judgment, a reversal on appeal affords no redress; for no security has been given by the undertaking of sureties, or otherwise, to indemnify the corporation or its stockholders. The sureties of the receiver merely undertake that he will faithfully execute the orders of the court; and according to the precedent in this case, they are bound in a trifling amount. If the receiver obeys orders, they are exonerated; and if his orders contemplate the infliction of punishment by the indirect and partial destruction of the property, the more completely they are exonerated, the greater the damage inflicted for which there is no redress.

Unless it is to be assumed that such results as these comport with the justice and policy of a great state, the inevitable consequences of the doctrine contended for utterly condemn it.

If, therefore, the state could demand the appointment of a receiver upon the ground and for the purposes stated, the appeal operated as a stay of such proceeding, and for that reason the appointment in this case would have been an excess of authority. But we do not rest our decision on this ground. We rely upon the proposition that a receiver of a dissolved corporation is only to be appointed when necessary for the purpose of preserving and distributing the property, and only upon application of a party interested, viz., a creditor or stockholder. This conclusion relieves us of the necessity of dwelling at length upon other objections to the validity of the order of the superior court. If it was totally void as to

all the world, it was, of course, void as to these petitioners, without regard to the special manner in which they were affected by it.

It is proper, however, to add that we think these objections urged by petitioners in their character as purchasers of the refinery are well founded.

They were not parties to the *quo warranto* in their character of purchasers. It may be true that the stockholders of a corporation are in a certain sense parties to an action to forfeit its franchise, but they are not parties in any other sense than that they are bound by the consequences of such judgment as the court in that action has power to give. If the court goes outside of the issues in the action, and renders a judgment or makes an order embracing matters entirely foreign to such issues, certainly the stockholders are not bound by such judgment or order.

Even conceding, then, for the sake of the argument, that the order of the superior court would have been valid if confined to property of the corporation, it cannot be claimed that it was valid if it embraced the property of vendees of the corporation.

There does, indeed, seem to be a sort of claim hinted at, rather than directly asserted, in one of the briefs, that a purchase *pendente lite* is in fraud of the rights of the state in such cases as this, and therefore void. But there appears to be no foundation for this claim. The state by its action acquired no lien on any of the property of the corporation, and it is difficult to understand upon what ground it can attack a sale *pendente lite*.

Up to the date of its dissolution, the corporation had the same power of disposing of its property honestly and in good faith that any corporation has, and, like any other corporation, it could sell to its stockholders. It matters not, therefore, that these petitioners were stockholders; they had the right to purchase; and if they did so, and entered into possession of the property, they had

the same rights in their character of purchasers that any stranger would have had.

It is claimed by respondent that the evidence in the *quo warranto* case showed that the transfer to the petitioners was a sham. This may be so, but the petitioners were not parties to that proceeding for the purpose of defending their purchase. Its validity was not in issue in that action, and could not, by any legal possibility, have been tried and determined therein. If any evidence came out in relation to the transfer, it was but incidental to other issues, and the petitioners could have no opportunity of rebutting it. If the *bona fides* of their purchase was to be attacked, and the validity of the transfer drawn in question, they were entitled to their day in court and an opportunity of adducing testimony to sustain their claim of ownership.

But it is said these petitioners did appear, did submit themselves to the jurisdiction of the court, and did have an opportunity to contest the making of this order; and consequently that the order, even though erroneous, is binding on them until reversed. The foundation for this assertion is, that, in response to the rule to show cause why a receiver should not be appointed, these petitioners, in common with all the other stockholders of the corporation, filed an affidavit showing that there were no creditors, and a request that the trustees of the corporation might be allowed to settle its business. In other words, they opposed the appointment of a receiver, upon the ground that no party in interest asked or desired a receiver. This is all that can be said; they opposed the appointment of a receiver of the property of the corporation. There was not a word in the pleadings or judgment in the original action, or in the rule to show cause, about any specific property, and of course no issue or opportunity to try the validity of the transfer of the refinery to the petitioners. The order, therefore, assumed

to determine a question that was never tried, and never anywhere put in issue.

But the form of the order is defended on the ground that "the rule is well settled that the order should describe, with sufficient certainty, the property which the receiver is to take, and *unless this is done, he cannot hold it.*"

Of course the property must be described with sufficient certainty; but it is sufficient, in appointing the receiver or assignee of an insolvent, or a corporation, or partnership, or the executor or administrator of a decedent, to mention, generally, all the property of the insolvent, the corporation, the partnership, or the decedent. If a specific description was necessary, what would justify the receiver in this case, or in any of the cases supposed, in taking property not specifically described? The truth is, in all such cases the receiver justifies and defends his possession by showing title in the person under whom he claims. Of course, when a litigation concerns some specific property described in the pleadings, it is proper, in appointing a receiver, to so describe the property in the order. But such is not the case here. And even in cases where a specific description is appropriate, it gives the receiver no right to take the property from the possession of a stranger to the action.

The case of *Ex parte Cohen*, 5 Cal. 494, is cited to sustain the proposition that the court had power and jurisdiction to decide whether the petitioners herein were in possession as agents or trustees of the corporation.

The case does not sustain the proposition. It merely holds that a court may, in a proper case, order, not only the party, but his agents and servants, to deliver property to a receiver. But it does not decide that when a third party is in possession, claiming to be owner in his own right, a court may determine without a hearing that he is a mere agent or servant. To say that a court

may make an order binding upon the servant or agent of a party to the action does not mean that a court or the receiver may take property out of the possession of a stranger claiming it as a purchaser in good faith, and throw upon him the burden of proving that he is not an agent or servant.

Another objection urged by counsel for respondent is, that these petitioners, having tried the *quo warranto* case in the superior court on the theory that the corporation was carrying on the business of the refinery, are estopped from asserting here that they are the owners.

There are many answers to this objection; but we deem it sufficient to say that we can look only to the pleadings, findings, and judgment in the *quo warranto* case to find what was tried, or what was the theory of the trial. The issues in that case all related to the conduct of the corporation prior to the filing of the information by the attorney-general, while the claim of the petitioners is, that they purchased the property after all the pleadings were filed, and just before the trial.

Besides, the evidence to which we have been referred shows very clearly that the transfer to petitioners was disclosed on the trial, and it cannot be said that they practiced any concealment or deception as to their claim, even if their purchase, pending the action, had been material. We do not see how it was material, but whether it was, or not, it cannot be doubted that the superior court was fully advised of their claims before the receiver was appointed. How else, indeed, could it have been concluded that the transfer was a sham?

We have thus gone cursorily over the propositions most strongly pressed by counsel in the attempt to sustain this order. They all rest upon the assumption that the court was authorized, without any application by a creditor or stockholder, to appoint a receiver. That assumption being shown to be unfounded, all the prop-

ositions resting upon it necessarily fall, but nevertheless we thought it proper to notice them.

We also desire, before taking leave of this branch of the case, to say a word as to the decision in *Eastline R. R. Co.* v. *State*, cited in an *addendum* to respondent's brief as " decisive of the whole question raised by petitioners." We cannot see that it decides anything in point. It merely holds that a Texas statute which directs the appointment of a receiver in cases of forfeiture of corporate franchises is *constitutional*. There is no question here as to the constitutionality of a statute. We have no such statute.

We come now to the questions as to the remedy.

Prohibition arrests the proceedings of an inferior judicial tribunal or officer when such proceedings are without or in excess of the jurisdiction of such tribunal or officer, and the writ issues in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. (Code Civ. Proc., secs. 1102, 1103.)

We have shown that the superior court, in appointing the receiver, exceeded its jurisdiction, and there is no question that the petitioners are seriously injured by the enforcement of the order. If, then, they have no plain, speedy, and adequate remedy in ordinary course of law, they are clearly entitled to the benefit of the writ of prohibition to arrest the proceedings under the void order.

It is claimed, however, that, so far as the superior court is concerned, there is nothing to arrest; that its order was made and executed before the alternative writ was issued; that the receiver alone is now acting, and that the writ does not run against him.

It is true the writ does not run against ministerial officers, and it is also true that its operation is preventive, rather than remedial. But property in the hands of a receiver is in the hands of the court. The receiver is the mere instrument of the court, and what he does the

court does.  It is the court, therefore, and not the receiver, which holds, administers, and disposes of the property in his hands; and so long as the property remains undisposed of, action by the court is necessary. In such case there is judicial action to be arrested, injury to be prevented, and a writ of prohibition is appropriate for that purpose.  The writ runs to the court, and operates directly upon the court, but indirectly upon the receiver.  If it is served upon the receiver, it is only that he may have timely notice that the proceedings of the court are arrested, and may stay his hand, as he is bound to do, having no power to act independently of the court, from which he derives all his authority.

In this case, when the petition was filed, and our alternative writ directed to issue, the receiver, as we shall see, was still striving to gain complete possession of the refinery and other property claimed by the petitioners; and even if he had been in complete control, that would have been but the first of a series of steps to be taken in carrying out the purpose of his appointment.  The keeping of the property in such a case is a continuous wrong; the closing down of the works is an independent wrong; the use of a portion of the property to preserve the rest is an unlawful interference with the rights of those lawfully in possession.  Besides all this, there remained to be carried out the sale and final distribution of the property.

By the very terms of the order appointing the receiver, he is to hold the property subject to the further orders of the court concerning it, and the necessity of such further orders would be implied, if it had not been expressly indicated.

As we understand the authorities on this point, the operation of the writ of prohibition is excluded only in cases where the action of the inferior tribunal is completed, and nothing remains to be done in pursuance of

its void order.   If its action is not completed and ended,
its further proceedings may be stayed, and if it is neces-
sary for the purpose of affording complete and adequate
relief, what has been done will be undone.

If this were not so, the inferior court, by proceeding
expeditiously and arbitrarily, could defeat the remedy.
Great reliance is placed by counsel for respondent upon
the decisions of this court, such as *Chester* v. *Colby*, 52
Cal. 517, and *S. P. R. R. Co.* v. *Superior Court*, 59 Cal.
476, to the effect that when an inferior court or tribunal
is proceeding, or threatening to proceed, in excess of its
jurisdiction, the objection to its want of jurisdiction must
be first submitted to such inferior court or tribunal, and
by it overruled, before resort is had to a higher court for
a writ of prohibition; and undoubtedly such is the estab-
lished rule of practice in this state.   But if this is the
law, it must inevitably happen in every case — as it would
probably happen in many cases under any rule — that
the lower court will make its ruling on the question of
jurisdiction before any prohibition can be sued out, and
if it holds that it has jurisdiction, and makes orders in
consonance with that view, the writ of prohibition will
be of no avail unless it affords the means, not only of
arresting future action, but of undoing past action.   In
other words, the two positions contended for would prac-
tically abolish the remedy.

No better illustration of the working of this theory can
be found than is afforded by the present case.   When
the order to show cause why a receiver should not be
appointed was served, neither these petitioners, nor the
defendant corporation, nor its stockholders, could have
got a writ to prohibit the appointment of a receiver with-
out first objecting in the superior court to its want of
jurisdiction.   Such objection, as we have seen, was made.
It would have been sufficient to have objected that there
was no application by a creditor or stockholder for a re-
ceiver, and no grounds alleged for such appointment;

but the defendant corporation or its stockholders went further; they showed affirmatively that there were no creditors, and that all the stockholders desired the statutory trustees to settle the business of the corporation. They showed everything, in short, necessary to sustain their objection to the jurisdiction, and the opinion of the superior judge, *supra,* shows that their objections were strenuously urged and maturely considered. But what happened ? After holding the matter under advisement for nearly a month, the respondent filed an opinion overruling the objections to his jurisdiction, and on the same day appointed a receiver, who on the same day qualified by taking the oath and filing his bond, procured an order approving his bond and confirming his powers, and actually — according to his own views — had possession of the vast property in controversy before the agent of the petitioners or their attorneys had any notice that their objections to the jurisdiction had been overruled. If such proceedings, conducted with such precipitate haste, can deprive the injured party of a remedy to which he is clearly entitled, then our law must be lame and impotent indeed.

But, happily, there is no foundation for the claim that an inferior court can, by mere haste and precipitancy, defeat the appropriate remedy for excesses of jurisdiction, at least in a case where it may be intercepted before its action is fully completed.

We are referred by counsel for respondent to a number of decisions of this court which are supposed to sustain their position on this point, but we do not find them at all in conflict with our views. Not one of them related to a case like this, and the general expressions to be found in the opinions must, of course, be construed with reference to the facts of the particular case.

In *Hull* v. *Superior Court,* 63 Cal. 179, it was said that prohibition was not available to prevent the acts of a *de*

*facto* ministerial officer, nor to prevent judicial acts already done.

The attempt in that case was to try the right to the office of sheriff. It was decided that this could not be done by prohibition; and what was said as to judicial acts already done had reference to the acts of the superior judge recognizing the official character of the incumbent *de facto* of the office. Such acts must of necessity have been complete and ended past remedy.

In *More* v. *Superior Court,* 64 Cal. 345, it was held that the order of the superior court was not in excess of its jurisdiction, which was a sufficient reason for dismissing the proceeding, and it was in fact dismissed on that ground. What else was said in the opinion seems to have been in answer to a claim that the court had power to undo something that the receiver had done in excess of his authority. It ought not to be necessary to point out the distinction between that case and this. Here *the order of the court* is in excess of its jurisdiction, and the *court,* through its receiver, is doing, and continuing to do, and threatening to complete, a series of proceeaings which are a wrong and injury to the petitioners. In that case the order of the court was regular and valid. The *court,* to which the writ alone runs, had done nothing in excess of its jurisdiction, but the receiver, as was claimed, was doing or had done something which, as a receiver, he had no right to do. Of course the writ of prohibition was not the proper remedy in such a case.

The case of *Coker* v. *Superior Court,* 58 Cal. 177, does not touch the point, the decision being that the superior court had not exceeded its jurisdiction.

Other decisions, cited from the reports of other states, are equally inapplicable, but we have no time to review them.

We will, however, refer to the language quoted by counsel from High on Extraordinary Legal Remedies, section 766. He quotes the following: "Another distin-

guishing feature of the writ is, that it is a preventive rather than a corrective remedy, and issues only to pre- . vent the commission of a future act, and not to undo an act already performed." To show what this means, he should have quoted what follows, in the next sentence: "Where, therefore, the proceedings which it is sought to prohibit has already been disposed of by the court, *and nothing remains to be done either by the court or the parties, the cause having been absolutely dismissed by the inferior tribunal*, prohibition will not lie," etc.

This is really the whole extent of the rule. Where the proceeding in the lower court has ended, and the court has nothing further to do in pursuance or in completion of its order, or where it has dismissed the proceeding, prohibition is no remedy; but where anything remains to be done by the court, prohibition not only prevents what remains to be done, but gives complete relief by undoing what has been done. (See forms of writs cited, 2 Chitty's Practice, 354, 355; *Ex parte Morgan Smith*, 33 Ala., N. S., 94; *Jones v. Owen*, 5 Dowl. & L. 669; *Marsden v. Wardle*, 3 El. & B. 659, and cases therein cited; *Sargeant v. Dale*, L. R. 2 Q. B. 558.) In *White v. Field*, 12 Com. B., N. S., 383, the court says (p. 412): "The writs in the register and elsewhere which conclude with a *mandamus* to the court Christian to recall an excommunication already erroneously fulminated, or a sequestration wrongly issued, are all, as to the prohibitory part, peremptory, and the *mandamus* to revoke the unauthorized proceedings *only accessory to the peremptory prohibition and necessary to give it effect*."

Here is a clear indication of the extent of the remedial office of the writ. It is primarily and principally preventive,—its office is to *arrest* proceedings; but when a case arises in which there are proceedings to be stayed or prevented, it will also annul such prior proceedings as may be necessary to make the remedy complete. The principle is that which prevails in equity. When there.

is jurisdiction, the court will afford complete relief. A party will not be compelled to resort to more than one proceeding or more than one court for redress of one injury. (See also *French* v. *Noel*, 22 Gratt. 454.) Many other cases are cited in the brief of counsel for petitioners to this point, and might be cited here, but it is unnecessary.

In the nature of things it·must be true that when a receiver has got possession of property under a void commission, and the future acts of the court, i. e., the sale of the property and distribution of its proceeds, are arrested by prohibition, the writ will also require a restoration of the property to the petitioner; for otherwise prohibition would be worse than no remedy at all. It would prevent the owner from getting either the property or its proceeds. The receiver would continue to hold it discharged of the duty of accounting for it.

We will next consider the objection that prohibition will not lie because the petitioners had other plain, speedy, and adequate remedies in due course of law.

It is suggested that they might have moved the court below to withdraw its order for a receiver. But suppose the court insisted that everything should be absolutely given over to the possession of the receiver before he would listen to any application for a revocation or modification of his order, can it be said that a motion only to be considered on such conditions afforded an adequate remedy, or any remedy? And suppose the motion had been heard and denied, would that have helped them? After all it would have been necessary to appeal to some other court for relief. But surely counsel can scarcely be serious in contending that because a party can move a court to set aside an invalid order, therefore he cannot have a writ of prohibition; for if this were so, there never could be a writ of prohibition; such a motion would always be possible. The most that can be claimed is, that an application should be made to the lower court

before moving for the writ. But this is another point to which we shall refer hereafter.

It is also suggested that the petitioners might have bowed to the authority of the receiver, given him possession of everything, and then obtained leave from the superior court to sue him in ejectment, or that they might have sued him in forcible entry.

It is true, the petitioners might have done this, but the remedy would have been neither speedy nor adequate. They had the right not merely to get their property back after a long and expensive litigation,— they had a right to keep it. The wrong with which they were threatened when they applied for the writ, and when the writ issued, was the deprivation of the possession and the use of their property. To give the property up in the hope of being allowed by the superior court to sue for it and recover it after years of litigation, was neither an adequate nor a speedy remedy. It would be as reasonable to say that an injunction should never issue to restrain a threatened injury, because the party injured may always have his action for damages.

But there is a distinction affecting this question which counsel seem to have wholly overlooked,—a distinction, that is to say, between acts of the receiver and acts of the court. When a receiver holds by a valid appointment containing no directions in excess of the jurisdiction of the court, so long as he acts in pursuance of the orders of the court he cannot ordinarily invade the rights of parties or strangers to the litigation. If he does an injury, he does it by exceeding his authority. In such case the fault is his, and his alone. If he attempts to take property lawfully in the possession of another, and to which he is not entitled, his attempt may be resisted, just as any other trespasser may be resisted, and the person defending his lawful possession is not brought in conflict with the court. If he by any means gains possession of the property claimed by a stranger, the court

will either order him to restore it, or if the title is in doubt, permit an action to be brought against him to try the title.

But when the court has exceeded its jurisdiction in appointing a receiver, or in directing him to take specific property out of the possession of a stranger, the injury that results is directly due to the action of the court; the wrong is in the order of the court, not in the receiver's transgression of the order. In such case it seems clear that the appropriate remedy is in some writ or proceeding which operates upon the court, as such, to restrain its judicial action, and not in the sort of resistance that may be opposed to an ordinary wrong-doer, or in such an action as may be brought against a private person who has committed a trespass. However confident he may be of his right to resist, no prudent man will take the risk of resisting the plain terms of an order of court, and no rule of practice should be laid down which will compel a man in that situation to defend his possession by force in order to avoid the necessity of resorting to an action to recover it. On the contrary, all men should be encouraged to avoid forcible resistance to orders of courts, no matter how plainly in excess of jurisdiction, by firmly upholding and freely administering the remedies provided for the summary correction of such excesses.

But it is said that the order appointing the receiver was appealable, and therefore prohibition will not lie.

The statute does not say that the writ will not issue in any case where there is an appeal. There must not only be a right of appeal, but the appeal must furnish an adequate remedy, in order to prevent the issuance of the writ. A number of cases have been decided in this court in which writs of prohibition have been refused because there was a right of appeal, but in all of those cases the appeal afforded a complete and adequate remedy for the threatened excess of jurisdiction.

In *Childs* v. *Edmunds,* 10 Pac. Rep. 130, the petitioner had a right to appeal, and by his appeal he could stay the enforcement of the writ of assistance. More than this, it does not appear that any excess of jurisdiction had been committed in ordering the writ of assistance; and if so, appeal was the only remedy.

In *Mancello* v. *Belrude,* 11 Pac. Rep. 501, and *Levy* v. *Wilson,* 69 Cal. 105, appeal was a complete and adequate remedy. In *Clurk* v. *Superior Court,* 55 Cal. 199, and *Wreden* v. *Superior Court,* 55 Cal. 504, there was no excess of jurisdiction, and appeal was the only remedy. The same is true of the case of *Powelson* v. *Lockwood,* 82 Cal. 613.

The difference between this case and all those referred to is, that here an appeal would have afforded no remedy for the wrong with which the petitioners were threatened. By means of an appeal, at the end of about a year and a half, in the ordinary course, they could have procured a reversal of the order,—if, indeed, as strangers to the action in which it was made, they had any right to appeal, — but in the mean time they would have been irreparably damaged, unless upon the taking of the appeal the court would have suspended action under the order. But the court had already decided that no appeal could by possibility stay the appointment of a receiver and the seizure of the property by him. And so it would have been necessary to make a motion to suspend the order, and for a restoration of the property or a withdrawal of the receiver, wait until that order was overruled, and a bill of exceptions settled, and take another appeal from that order, as was done in *Lee Chuck* v. *Quan Wo Chung Company,* 81 Cal. 222; or some other proceeding would have been necessary, involving ruinous delay.

For in the mean time the receiver would have gained complete possession of the refinery and other property; the refinery would have been closed, stock injured, con-

tracts broken, employees discharged or kept in idleness, and every possible damage inflicted, without any security for the loss.

In such a case there was no adequate remedy, except by a proceeding which would prevent the receiver from taking possession of the property, and the writ of prohibition was, as has been shown, the appropriate remedy for that purpose. It has, it is true, been in great measure shorn of its efficacy by the precipitate haste of the receiver in proceeding under the order of the superior court, but the propriety of the course pursued by the petitioners is to be judged, not by the consequences of what the receiver has done, but by the case upon which their petition was founded and our writ awarded.

The fact, therefore, if it be a fact, that the petitioners could have appealed from the order appointing the receiver, does not preclude them from having the writ of prohibition.

The case of *Haile* v. *Superior Court*, 78 Cal. 418, so much relied on by counsel at the oral argument, and cited again with emphasis in the briefs since filed, is, as we pointed out at the hearing, radically different from this case. There the order of the superior court was in no respect in excess of its jurisdiction. The receiver was regularly appointed in a proper case to take charge of the estate of a voluntary insolvent. He was not directed to take any specific property; the court had decided nothing against the claims of the petitioner, and was not assuming to decide anything with respect to his claims. The *court*, in short, had done nothing which could have been prohibited. But it was feared by the petitioner that the receiver might sell property previously assigned to him by the insolvent, and he wanted such action by the receiver restrained. He feared, in other words, that the receiver would exceed his authority and commit a trespass. We said, in vacating the alternative

writ, that if the receiver had taken any property belonging to the petitioner under the order of the superior court, he had done so without authority, and was a mere trespasser, for which plaintiff had a remedy by action, and that he could not resort to the extraordinary remedy of prohibition.

What bearing this decision can be supposed to have upon a case where the order of the court is in excess of its jurisdiction, and where the object of the proceeding is primarily to restrain the court in its judicial action, and only indirectly affects the receiver, who has done nothing except what the court has commanded him to do, we have thus far failed to comprehend. We have pointed out in another connection the reasons for allowing a summary remedy to arrest judicial action in excess of jurisdiction, and the difference between the situation of a person wronged by such action and one threatened by a private trespasser. In the one case the party threatened has a right to resist the trespass by force if necessary; in the other, though he may have the right to resist, it is against the policy of the law to encourage such resistance, and a summary remedy is given to arrest the proceeding.

It is next urged, in behalf of respondent, that prohibition will not lie to try title to property. Which means, in its application to this case, that the petitioners cannot be allowed to show, in this proceeding, that they are the owners of the refinery. But we think counsel have misapprehended the bearing of the proposition which they lay down, and to which we assent.

It is true, the title to the property cannot be tried in this proceeding, but what this means is, that, when a court, by its order, has taken property out of the actual possession of a stranger to the proceeding, who claims it as his own, the order is in excess of jurisdiction, irrespective of the actual state of the title. Whether the party in possession really held the title or not, the order

is void, because no man can be deprived of his property without due process of law. A court cannot take property from his possession without a hearing, and compel him to prove title in order to regain it.

It is next suggested that the writ of prohibition does not issue *ex debito justitiæ*, but it is to be granted or withheld, in the sound discretion of the court, and that in this case it ought not to be allowed in favor of these petitioners, because they are members of the sugar trust, monopolists, and are the tempters who seduced the American Sugar Refinery into the combination.

There is no competent proof before us of these facts; but assuming them to be so, the law is not such as counsel claim it to be. A decision may be found here and there saying in a loose way that the issuance of the writ is in the discretion of the court, and a statement, in general terms, to the same effect, may be cited from text-writers, who merely echo the decisions, but it never was the law that a court having jurisdiction to issue the writ had any discretion to refuse it when demanded by the real party in interest bringing himself clearly within the law. If such an idea has obtained anywhere, it has been in consequence of a misunderstanding of the English cases.

In England the practice in prohibition was analogous to the practice in other actions at law. An original writ (of prohibition) issued for the purpose of securing an appearance, and after appearance the pleadings followed; that is, the plaintiff declared, the defendant pleaded or demurred, and so on. But there was this difference between the writ of prohibition and other original writs, that whereas the writs in ordinary actions issued of course on application of the plaintiff, the writ of prohibition did not issue of course, but only upon affidavit showing grounds for its issuance.

Another difference was, that, not only the party injuriously affected by the proceedings of the inferior court,

but any subject of the king, was allowed to interfere to prevent an excess of jurisdiction, and in case of suit by a *stranger to the proceeding to be stayed*, the superior courts exercised a discretion in granting or withholding the writ, but never when the party affected was the plaintiff. This whole subject is reviewed exhaustively in the case of *Mayor of London* v. *Cox*, L. R. 2 H. L. 278, 280. The following quotation from an opinion of Lord Chief Justice Cockburn, therein cited (p. 280), shows what the law on this point is: —

"I entirely concur in the proposition that although the court will listen to a person who is a stranger, and who interferes to point out that some other court had exceeded its jurisdiction, whereby some wrong or grievance has been sustained, yet that it is not *ex debito justitiæ*, but a matter upon which the court may properly exercise its discretion, *as distinguished from the case of a party aggrieved*, who is entitled to relief *ex debito justitiæ*, if he suffers from the usurpation of jurisdiction by another court." (*In re Foster*, 4 Best & S. 187.)

In this state, it is always the party aggrieved who sues; and if he shows a case for the issuance of the writ, the court cannot refuse it on the ground that he is a bad man, and deserves the punishment he is threatened with, or upon any other consideration which appeals to the mere discretion of the judge.

We come finally to the proposition upon which counsel for respondent insists most strenuously, viz., that the jurisdiction of the court to grant a peremptory writ of prohibition depends absolutely upon the allegation and proof by petitioners that before filing their petition here they had pleaded to the jurisdiction of the superior court, and that their plea had been overruled.

To sustain this proposition they cite the decisions of this court, above referred to (*Chester* v. *Colby*, 53 Cal. 517, and *S. P. R. R.* v. *Superior Court*, 59 Cal. 476), and they cite a number of decisions from the courts of other states.

It is clear that the California cases do not support the contention of respondent. In each of them a party to the proceeding in the lower court was the petitioner for the writ, and all that was held in the first case was, that, an objection to the jurisdiction of the lower court having been taken by demurrer, and being undecided there, this court would not interfere by prohibition before that court had overruled the objection. In the second case, it was held that the party must in *some form* object to the want of jurisdiction of the lower court before the writ of prohibition would issue. In neither case was the failure to make such objection held to be jurisdictional, but the refusal to issue the writ was put upon the ground that prohibition is a prerogative writ, and consequently that the court had and ought to exercise the right to make its issuance subject to reasonable conditions, and that it was reasonable to give the lower court an opportunity to correct itself before calling the judge to answer here.

We have no doubt that both decisions are correct in all that they decided, and in all that was said in the opinions on this point. To the extent that its issuance may be made subject to reasonable conditions applicable equally to all cases and all suitors, the writ of prohibition is, no doubt, a *"prerogative"* writ, though it may be doubted if that is a correct term of description; for, in the same sense, all writs might be called prerogative writs. And we are satisfied that the rule of practice established by these decisions is a proper and wholesome rule, recommended by important considerations of expediency.

When a party has an opportunity of objecting in the lower court that it is proceeding or is asked to proceed in a matter without or in a manner exceeding its jurisdiction, he ought to make the objection there. It is only fair to the court that the objection should be brought to its attention in some proper form. If no ob-

jection is made,—the party having every opportunity to object,—the court may reasonably infer that no ground of objection exists, and not only is the court entitled to the advice and suggestions of the party with reference to objections apparent on the record,—there are many cases in which the ground of objection would not appear unless set forth by plea in some form.. And it is to be presumed that any valid objection properly brought to the attention of the court would generally prevail, and that all necessity for a writ of prohibition would be obviated. Therefore, the interest of the public in preventing unnecessary litigation, as well as consideration for the judge of the lower court, demand that the objection should be made at the first opportunity.

These are the reasons of the rule, and they indicate its scope and the extent of its application, as the authorities very fully show. We have not time to review the cases, other than those cited from the reports of this state, but we refer to the case of *Mayor of London* v. *Cox*, L. R. 2 H. L. 278, 280, in which the learning of the subject is exhausted. That was a case appealed from the court of exchequer to the exchequer chamber, and finally to the house of lords. Before deciding it, the lords requested the opinion of the justices of the queen's bench on two questions, the second being as follows: "Whether the garnishees in the lord mayor's court could maintain an action for a prohibition without having pleaded in the lord mayor's court." To which the justices unanimously responded *that they could.* This was in accordance with the unanimous decision both of the court of exchequer and exchequer chamber, which was accordingly affirmed in the house of lords. The answer of the justices, prepared by Justice Willes, contains a full review of all the cases, showing that even in England the subject had not been clearly understood, and that some inconsistent and erroneous decisions had been made. It is not surprising, therefore, that in some of the United States

the same confusion has arisen, and that some cases have been erroneously decided, to the effect, for instance, that the issuance of the writ is in the discretion of the court, and that a formal plea to the jurisdiction of the lower court is an essential prerequisite to its issuance. Fortunately no such decisions have been made in this court, though in deciding *Chester* v. *Colby,* 53 Cal. 517, an Arkansas case is cited with approval which apparently does go to the extent claimed by respondent. But we are fully at liberty, without questioning the authority of any case decided in this court, to adopt the correct rule and doctrine as expounded and laid down in the case of *Mayor of London* v. *Cox,* L. R. 2 H. L. 278, 280.

Without going into the niceties of the subject, it may be said that the following propositions, applicable to this case, are fully supported by the decision in that case:—

1. If a want of jurisdiction is apparent on the face of the proceeding in the lower court, no plea or preliminary objection is *necessary* before suing out the writ of prohibition.

2. If the proceeding in the lower court is not on its face without the jurisdiction of such court, but is so in fact by reason of the existence of some matter not disclosed, such matter ought to be averred in some proper form, in order to make the want of jurisdiction appear.

3. But this is not essential to the jurisdiction of the superior court to grant prohibition. It is only laches, which may or may not be excused, according to circumstances.

Accordingly, we find that frequently a failure to plead in the lower court was excused for the reason that it appeared that the plea would have been rejected if made. The whole question in fact was one of practice merely, not of jurisdiction, and the objection which most frequently prevailed to the granting of the writ was, not that the application came too early, but that it came too late.

The rule which we have adopted is founded upon the same considerations, and directed to the same end. Our jurisdiction is ample to arrest by prohibition any proceeding without or in excess of the jurisdiction of the superior court, but by statute we are forbidden to do so when there is a plain, speedy, and adequate remedy in ordinary course of law; and by the practice which we have adopted and prescribed for ourselves, we will not issue the writ until the objection to its want or excess of jurisdiction has in some form been made in and overruled by the lower court, the whole foundation of the rule being the respect and consideration due to the lower court, and the expediency of preventing unnecessary litigation.

Applying these principles to the present case, we find that the petitioners were not, in their character of purchasers of the specific property described in the order appointing the receiver, parties to the *quo warranto,* or the rule to show cause why the receiver should not be appointed, and in that character they had no opportunity to object until after Mr. Reddy appeared at the refinery armed with an order of court authorizing him to take it into his possession.

As stockholders of the corporation, however, it is contended, and may be conceded, that they were virtually defendants in the *quo warranto,* and parties affected by the rule to show cause.

But it clearly appears that in that character they made every objection that could be made to the order *asked,* which did not refer to any specific property. They filed an affidavit showing that there were no creditors of the corporation, and a certificate showing that all the stockholders had requested the directors to close up the business of the corporation. They also brought to the attention of the court the fact that an appeal from the judgment of forfeiture had been taken and perfected. All these objections went to the jurisdiction; they were

all argued, all maturely considered, and all overruled, in a carefully prepared opinion in writing.

What more could possibly be necessary, in order to authorize us, under any rule prevailing anywhere, to examine and decide upon the objections so made and so overruled? Certainly nothing that has ever been decided by this court, and nothing in the reason of the rule.

Even as to the objections to the order, as made, upon grounds peculiarly affecting the petitioners as purchasers of the specific property therein described, they did everything which the reason of the rule requires.

It is objected that they did not file a formal plea, make a formal motion, and await a decision of the superior court before moving here. But what opportunity were they allowed to take these steps?

The first notice they had of the order empowering the receiver to take the property claimed by them was his appearance at the refinery demanding immediate possession, and asserting his authority and control. In the short respite of one night which was granted them, they prepared affidavits setting forth their claims upon which to base an application for such a stay as would enable them to move for a suspension or modification of the order. Their attorney sought the respondent at his chambers at the earliest possible moment, stated to him the substance of the affidavits, and the nature of his application. He also stated that there was a scramble for the possession of the refinery between the receiver and the agents and employees of the petitioners. Thereupon the respondent distinctly informed him that his application would not be considered unless full and complete possession of the property was first delivered to the receiver. To have yielded to this condition would have been to give up the whole controversy, and submit to the very wrong which it was their object to prevent. They were not bound, therefore, to move upon such terms, and being advised, and fully believing, — what the event

proved to be the fact,—that the respondent and the receiver would proceed with all expedition to enforce the invalid order, they were justified in filing their petition without further delay.

It is unnecessary, in this view, to determine whether the affidavit of Mr. Mott was actually read to Judge Wallace or not, and we shall not attempt to reconcile the conflict in the testimony upon that point. In any event, it is certain that our jurisdiction to issue a peremptory writ is complete, and equally certain that the respondent has no reason to complain that objections to his order were not submitted to his decision before this proceeding was instituted.

It is also unnecessary to enter into any detailed discussion of the testimony as to the extent or completeness of Mr. Reddy's possession at the time the writ was served. It is the time when the writ is ordered, not the time when it is served, that fixes the extent of our power to interfere with the proceeding in the lower court. But even this is immaterial in this case; for we have shown that, so long as property in the hands of a receiver remains subject to further judicial action which may be arrested by the prohibition, the remedy will be made complete by ordering its restoration.

So far, therefore, as the prohibition is concerned, it makes no difference if we assume that Mr. Reddy had complete possession at the time we ordered the alternative writ.

It is only with respect to the proceeding for contempt that the facts relating to the possession of the receiver are material.

In considering the question of contempt, it will be necessary to examine with some care the evidence on this point, and as this will necessarily occupy some time, and as it is important that the petitioners should have as speedy relief as possible, we will make that matter the subject of a separate opinion to be filed, at our earliest

convenience. In the mean time an absolute and peremptory writ of prohibition will issue in accordance with the views herein expressed.

SHARPSTEIN, J., McFARLAND, J., PATERSON, J., WORKS, J., and Fox, J., concurred.

Mr. Justice Thornton, being absent from the state, did not participate in the decision.